## Commonwealth v. Shults, Appellant.

*Criminal law—Murder—Insanity—Charge.*

It is not error for a judge to so charge in a homicide case as to give the jury the impression that he regards the testimony submitted on behalf of the defendant as not entitled to much weight so long as the jury are left in the free exercise of their own judgment.

In a murder case a trial judge cannot be convicted of error in charging on the subject of insanity as follows: "The jury are not bound to decide this case according to the views of the doctors, one way or the other. The doctors are not the jury. They cannot take the stand and say such and such is the case, and then decide the case. Although you have been told that you are bound by the evidence, or as much of it as you believe, when you come to medical testimony, or any other expert testimony, that is merely opinion testimony. It may be of value, and it may be of no value just as it appeals to you. . . . It is for you to decide whether

they are worthy of any consideration, or whether they are not worthy of consideration at all, and if you think that they are worthy of consideration you will decide how much they are worth, and how much you will give to them. If you consider the testimony cannot do you any particular good, you will dismiss it, but whether you will dismiss it or not, is entirely a matter for you, and what effect you will give to it is also a matter for you."

MESTREZAT, BROWN and STEWART, JJ., dissent.

Argued March 23, 1908.   Appeal, No. 83, Jan. T., 1908, by defendant, from judgment of O. & T. Phila. Co., June T., 1907, No. 175, on verdict of murder of the first degree in case of Commonwealth v. Francis Marion Shults.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Indictment for murder.

The opinion of the Supreme Court states the case.

Verdict of guilty of murder of the first degree, upon which sentence was passed.

*Error assigned* was portion of charge, quoted in the opinion of the Supreme Court.

*Sidney L. Krauss*, with him *William A. Carr* and *W. Horace Hepburn*, for appellant.

*Wm. Findlay Brown*, assistant district attorney, with him *Samuel P. Rotan*, district attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 25, 1908:

The only assignments of error that need be noticed are those relating to the evidence of the experts as to insanity, and these are practically all condensed in the exception to that portion of the charge in which the judge said to the jury: " We will now come to the medical testimony.   I will say to you on that score that you are not bound to decide this case according to the views of the doctors one way or the other. The doctors are not the jury.   They cannot take the stand and say such and such is the case and then decide the case. Although you have been told that you are bound by the evi-

dence, or as much of it as you believe, when you come to med-
ical testimony or any other expert testimony, that is merely
opinion testimony. It may be of value and it may be of no
value, just as it appeals to you. One side puts an expert on
the stand and he gives his opinion, and the other side puts an
expert on the stand and you get the opinion of that doctor.
They are both cross-examined, and it is for you to decide in
considering all their evidence, whether you will be guided to
any degree by their opinions, whether you think they are
worthy of any consideration or whether you think they are
not worthy of consideration at all. If you think they are
worthy of consideration you will decide how much they are
worth and how much you will give to them, judging by the
examinations and cross-examinations and the whole probabil-
ities of the testimony as applied to the facts as you find them.
If you consider the testimony cannot do you any particular
good, you will dismiss it, but whether you will dismiss it or
not, is entirely a matter for you, and what effect you will
give to it is also a matter for you."

The law as laid down in this passage, even taking it as it is,
separated from its context is entirely accurate. "The jury
are not bound to decide this case according to the views of
the doctors one way or the other." That is correct. "It
may be of value or it may be of no value, just as it appeals
to you . . . . it is for you to decide whether they are worthy
of any consideration or whether they are not worthy of con-
sideration at all, and if you think they are worthy of consid-
eration you will decide how much they are worth and how
much you will give to them." This is no more than telling
the jury that the credibility of the testimony and the weight
it is entitled to in reaching a verdict is exclusively for the jury
to determine. That is the settled law of all the cases. And
even if we seem to see in the phrasing of the charge that the
judge did not think the testimony of much weight, that was
not error. He might have gone further and told the jury
in explicit terms that he considered it "very weak:" Com.
v. Van Horn, 188 Pa. 143. So long as the jury were left in
the free exercise of their own judgment there was no error.
That the jury in this case were so left is beyond question.
Even the particular passage excepted to, concluded with the

words, " whether you will dismiss it or not is entirely a matter for you, and what effect you will give it is also a matter for you."

So far the passage of the charge excepted to has been considered by itself, apart from its context. But that is not the rule. The charge can only be considered fairly as a whole, and the charge in the present case repeatedly and most explicitly told the jury that the weight and effect of the testimony on every branch of the case was for them to decide on their own judgment.

The killing was admitted, and even the premeditation, the deliberate preparation for the murder, was not denied. The only possible point of doubt in the case arose from the apparent absence of any sane motive for the act. This was altogether a question for the jury, and if they took a severe view it was not from any error of the judge.

Judgment affirmed, and record remitted to the court of oyer and terminer for the purpose of execution.

Mr. Justice Mestrezat, dissenting :

I would sustain the assignments of error, so far as they allege inadequacy in the charge of the court on the question of insanity. I am convinced that the charge in this respect was insufficient, and to a certain extent misleading, and that the case was not submitted to the jury in accordance with the law as determined by this court. In Pannell v. Commonwealth, 86 Pa. 260, the defense was insanity. As here, the trial judge seemed to regard the testimony of medical experts as of little or no value. There was a verdict of guilty of murder of the first degree. In reversing the judgment this court said, inter alia (p. 269) : " It is well settled that the knowledge and experience of medical experts is of great value in questions of insanity. They are like those of experts in all other branches of science and of art. Evidence had been given of the observation, experience and skill of these medical experts, sufficient to enable them to form intelligent opinions, and they had testified to those opinions. We cannot understand on what principle the learned judge said to the jury that in this case he questioned very much whether they would realize much, if any, valuable aid from their testimony. True, the jury were

not bound to adopt the conclusions of the experts, yet they should have been instructed to give a careful consideration to the testimony of those who had made the diseases of the human mind a special study. In a former part of the charge the jury was told that ' great respect should be paid to the opinion of that class of witnesses,' followed by other remarks equally correct. Yet, when the court came to apply the testimony to the case trying, its effect was almost destroyed. We see no especial circumstances in this case to justify taking from the evidence of these medical witnesses that consideration to which the testimony of experts is generally entitled." The doctrine announced in this case has never been doubted or overruled by this court. It is unquestionably sound, and should be followed in all cases where the defense is insanity. The testimony of medical experts is frequently, and sometimes the only, testimony upon which a defendant must rely to support the defense of insanity. Who can know so well the action or operation of the human mind as the medical expert who has made it a special study and matter of assiduous inquiry? He is universally recognized as the most competent to speak on the subject, and hence it is that in our system of jurisprudence his testimony is to be given very careful consideration by the jury where the defense is insanity. This being true, it devolves upon the trial court to explain to the jury the character of such testimony and the weight to be given to it. This is a duty incumbent upon the trial judge, and a failure to perform it should be ground for reversal. It is error for the trial judge to ignore the testimony, or to place it on a par with the testimony of a layman. It is true that it is for the jury in considering the defense of insanity to determine what weight the testimony of a medical expert shall have, but the court should have instructed the jury that, in weighing his testimony, they should consider that he had fitted himself to testify by a special study of the subject. Such testimony must not be discredited by stating that it is merely opinion testimony, without reference to the opportunities of the witness for qualifying himself to speak on the subject. Even in civil cases, where there is a conflict in the testimony, it is the duty of the trial judge to direct the attention of the jury to the opportunities the witnesses have for knowing what they are

testifying about. The opportunity of the witness for obtaining a knowledge of the subject, as well as his superior ability to judge of the matters of which he speaks, are always matters which a jury should consider in giving weight to testimony, and hence the duty rests upon the trial judge to point out such distinction between witnesses, when it occurs, so that the jury may consider properly and intelligently the testimony for and against the proposition submitted for their determination. This is true in civil cases, and the rule should be strictly observed in cases involving a human life.

The majority opinion quotes the part of the charge bearing upon the evidence given by the medical experts on the question of the insanity of the defendant. No other part of the charge cures the error it contains. It is impossible to reconcile it with our decisions. The judge said: " I will say to you on that score (medical testimony) that you are not bound to decide this case according to the views of the doctors one way or the other. The doctors are not the jury." This proposition, as stated, is not sound. The jury were bound to decide the case according to the testimony of the medical experts if that testimony outweighed the conflicting testimony in the case. If it convinced the jury, they were bound to render a verdict in accordance with it. The tendency of the language just quoted was to discredit the medical testimony with the jury, if not to compel them to ignore it. It was not intimated in the case anywhere, even in the heated arguments of counsel, that the doctors were the jury. The suggestion that they were not the jury was ill-timed and should have been omitted from the charge. It might have been permissible in the arguments of counsel, but should have had no place in the charge of the court. The learned judge, however, did not stop with this expression of his views on the subject. He further said: " They (the doctors) cannot take the stand and say such and such is the case, and then decide the case." The counsel for the defendant advanced no proposition of that kind. It was not suggested nor even intimated in the case until the learned judge, by this unfortunate expression, left the impression that the medical testimony was offered for that purpose. He again says in his charge: " When you come to medical testimony, or any other expert

testimony, that is merely opinion testimony." What was the jury to infer from that remark? Simply that the medical or expert testimony was to be considered the same as the testimony of the laymen, without the jury taking into consideration the fact that the physicians had qualified themselves to speak upon the subject. The judge did not stop there in discrediting the testimony of the medical experts, but he continued: "It (medical testimony) may be of value and it may be of no value, just as it appeals to you." In other words, "you may give it consideration or you may ignore it; if, like many laymen, you think expert testimony is of no value then you may, as you doubtless will, disregard it in determining the question of the prisoner's sanity." The learned judge then proceeded to say: "It is for you to decide, in considering all the evidence, whether you will be guided to any degree by their opinions, whether you think they are worthy of any consideration, or whether you think they are not worthy of consideration at all." In the broadest manner possible, therefore, the jury were told that it was wholly a question for them to determine whether they would give any consideration whatever to the testimony of the medical experts. The attention of the jury was not directed to what this court said was important, viz.: that they should "give a careful consideration to the testimony of those who made the diseases of the human mind a special study." On the other hand, and directly in opposition to the ruling of this court, the trial judge in the case at bar told the jury that it was entirely with them to say whether such testimony was worthy of consideration at all. In view of the fact, undisputed and uncontroverted, that the two medical experts called by the defendant were of the highest standing in their profession and of recognized ability, the error of the trial judge is so palpable and does such great injustice to the defendant that the conviction should be reversed without any hesitation whatever.

The charge was not only erroneous and inadequate as to the effect and weight which should have been given to the medical testimony, but it was also clearly inadequate in not pointing out the absence of any sane motive whatever for the commission of the offense by the defendant. In fact, it can-

not be pretended under the testimony in the case that there was any motive which a sane mind could have for the commission of the atrocious crime of which the defendant was convicted. It is true, that where the accused denies that he committed the act, or where it is admitted or established that he did commit it, the motive is unimportant in determining guilt, but we distinctly ruled. in Commonwealth v. Buccieri, 153 Pa. 535, that where insanity is set up as a defense the absence of any motive which would prompt a sane man to commit the deed adds to the strength of positive evidence of unsoundness of mind. Here, the defense was insanity, and if the medical testimony on the part of the defendant was believed that defense was sustained. The absence of a sane motive for the defendant taking the life of his five year old child was, therefore, important, and would have tended strongly to support the defense of insanity. In a very lengthy charge, the court does not refer to the absence of a motive for the commission of the offense, and hence that important element in sustaining the defense is not brought to the attention of the jury, as it unquestionably should have been. It was the duty of the trial judge to charge fully upon the law applicable to the facts of the case without any special request on the part of the defendant. In cases of this character, the court performs its duty only when it instructs the jury upon the law which is applicable to the facts disclosed by the evidence in the case. As correctly said by Mr. Justice Paxson in Meyers v. Commonwealth, 83 Pa. 131, 143: "The rule that a judge is not to be convicted of error for what he omits to say, unless his attention is called to the subject by a point or request to charge, is well enough in civil cases, but ought not, in my judgment, to be applied to a capital case. The prisoner has a right to have the jury properly instructed upon every question of law legitimately raised by the evidence. This right he cannot waive, nor can his counsel do so for him."

The facts of this case made it especially important that the trial judge should have directed attention to the testimony of the medical experts and the weight which it should receive. A father wandered with his five year old daughter to Fairmount Park, there wrote a letter in which he spoke most endearingly of the child and other members of the family, and

within a short time thereafter was found in the park with his dead child pressed to his breast with a fatal bullet wound in her body and his own throat cut. The defense was psychic epilepsy or epileptic insanity, and there was evidence showing that the defendant had received a blow on the head in his early youth which might have resulted in insanity, that at times he suffered with his head, had convulsions, was melancholy and morose, and had spent a year in an insane asylum. No motive which could have prompted a sane mind to commit the horrible deed was given or even intimated on the trial. In my judgment, the facts of this case required the trial judge, not to minimize the value and weight of expert testimony as he did in his charge but, as we held in the Pannell case, he should have told the jury " that the knowledge and experience of medical experts is of great value in questions of insanity," and should have instructed them " to give a careful consideration to the testimony of those who made the diseases of the human mind a special study."

I would reverse the judgment and award a new trial.

Mr. Justice BROWN and Mr. Justice STEWART concurred in the dissent.