Clifton WRIGHT

v.

Bruce K. REDDING et al.

Civ. A. No. 73–1273.

United States District Court,
E. D. Pennsylvania.

Dec. 16, 1975.

Clifton Wright, pro se.

Bruce K. Redding, pro se.

Howard R. Flaxman, Philadelphia, Pa., for Bernard Weiler.

Patricia Freeland, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for J. E. Caldwell & Co.

**1182**

## MEMORANDUM AND ORDER

**BRODERICK, District Judge.**

Plaintiff Clifton Wright ("Wright") brought this action in replevin which was tried before the court without a jury on July 14 and 15, 1975. Wright filed a *pro se* complaint and represented himself at trial without the assistance of counsel. Defendant Bruce K. Redding ("Redding") also proceeded without counsel and represented himself at trial.

 The first question which must be decided is the disputed issue of jurisdiction based on diversity of citizenship. Federal diversity jurisdiction is determined by examining the citizenship of the parties at the time the action is commenced. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). On June 8, 1973, the date on which this action was begun, Wright was a prisoner at Leavenworth Penitentiary in Kansas. A prisoner retains the domicile that he had at the time of his incarceration and may not claim a change of domicile by virtue of his incarceration. *United States ex rel. Fear v. Rundle*, 364 F.Supp. 53 (E.D.Pa.1973). Wright testified that he had been arrested in New York, that at the time he was sentenced to prison he had been domiciled in New York, that he voted in New York and possessed a New York driver's license. At the time this suit was instituted, defendants Redding and Bernard D. Weiler ("Weiler") were domiciliaries of Pennsylvania, and defendant J. E. Caldwell and Company ("Caldwell") was a Pennsylvania corporation whose principal place of business was in Philadelphia. Since the amount in controversy exceeds $10,-000.00, we find that there is diversity jurisdiction under 28 U.S.C. § 1332.

In this action of replevin, Wright seeks return of certain jewelry which has been in the possession of Caldwell since March 15, 1972. On January 27, 1972, while an inmate at Lewisburg Prison in Pennsylvania, Wright executed a power of attorney appointing Redding as his agent to obtain jewelry and other property from Sylvia Cottman ("Cott-man"). This document provides that for his services, Redding was to be compensated as follows:

> Redding is entitled 20 per cent of any amount collected or saved— (Meaning 20 per cent of any amount collected or saved from falling into improper hands.)

> The said Bruce K. Redding is empowered to secure all goods from Sylvia Cottman, sometimes known as Sylvia Cottman Wright, including money, jewerly, stocks, banks papers, books, account records etc. Real Estate and is hereby empowered to make settlements and to do all or anything whatsoever to effect same. The total expences for this service is not to exceed 5 per cent in additional to the fee of 20 per cent, thereby making a total maximum charge of 25 per cent (*Sic*).

On March 9, 1972, Redding, accompanied by Cottman, took 26 pieces of Wright's jewelry to Weiler, a jewelry appraiser. Weiler appraised the 26 pieces at $22,-400.00 and on March 11, 1972, returned the jewelry to Redding and Cottman. Sometime later, Weiler received a letter from Wright, dated March 13, 1972, which directed Weiler to retain the jewelry until he received further instructions from Wright. Redding attempted to sell the jewelry and received two offers for it: Weiler, who had appraised it at $22,400.00, offered only $3,630.00 for the 26 pieces, while Caldwell offered $3,800.00. On March 15, 1972, Redding delivered the 26 pieces of jewelry to Caldwell for safekeeping and on April 3, 1972, Wright executed a revocation of his power of attorney to Redding and so notified Redding.

All of the parties in this litigation admit that all 26 pieces of jewelry are the property of Wright. Neither Weiler nor Caldwell claim any interest in the jewelry. Although Redding does not dispute Wright's ownership of the jewelry, he does claim a lien in the amount of $6,035.75 for expenses and services in accordance with the power of attorney.

 The plaintiff in a replevin action must show a superior right to pos-

session. *International Electronics Co. v. N.S.T. Metal Prod. Co.*, 370 Pa. 213, 88 A.2d 40 (1952). Since all of the parties in this replevin action admit that Wright is the owner of the jewelry, the court finds that the jewelry should be returned to Wright. Redding, however, claims a lien for services and costs on the basis of his power of attorney in the amount of $6,035.75. At trial, Redding testified that he possessed "something in the nature of a warehouseman's lien." Having considered every possible lien which might be available to Redding under the facts of this case, the Court can find no legal or factual basis which could give rise to a lien under Pennsylvania law and so denies Redding's claim on this basis.

■ The court, having found that Redding has no basis for his lien claim, will consider his *pro se* answer a counterclaim for services and costs in the amount of $6,035.75. The question here presented is whether a defendant in a replevin action heard in federal court may assert a counterclaim. The Pennsylvania Rules of Civil Procedure governing the action of replevin provide in Rule 1082(a):

> A claim secured by a lien on the property may be set forth as a counterclaim. No other counterclaim may be asserted.

Does Rule 1082(a) of the Pennsylvania Rules of Civil Procedure prohibit Redding's counterclaim in a replevin action in this Court?

Rule 64 of the Federal Rules of Civil Procedure specifically provides that actions such as replevin "shall be prosecuted . . . pursuant to these rules." As stated in 7 *Moore's Federal Practice*, 2d edition, ¶ 64.08 at 64–39 (1974), the above quoted portion of Rule

65 "makes the Federal Rules on commencement, pleading, etc., up to and through appeals . . . generally applicable."[1] In *Consumers Time Credit, Inc. v. Remark Corp.*, 227 F.Supp. 263 (E.D.Pa.1964), Judge Kraft discussed Rule 65 and concluded that where actions are instituted in the federal court in accordance with remedies authorized under state law, the Federal Rules of Civil Procedure are applicable to such remedies and not the Pennsylvania Rules of Civil Procedure.[2] Since Rule 13 of the Federal Rules of Civil Procedure compels a defendant to assert his counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," we consider Redding's *pro se* answer a compulsory counterclaim for services rendered and costs incurred in connection with the jewelry.

The Court finds that during the period when the contract was in effect Redding saved Wright's jewelry from "falling into improper hands", in accordance with the terms of the contract. Redding's total claim is for $6,035.75 for services and costs. The power of attorney provides that the "total expenses for this service is [*sic*] not to exceed 5 per cent in additional [*sic*] to the fee of 20 per cent, thereby making a total maximum charge of 25 per cent." Redding testified that he arrived at the $6,035.75 figure by taking 25 per cent of the $22,400.00 (the appraisal value of the jewelry) plus 25 per cent of $1,743.00 (the sum in a bank account in Wright's name). Redding testified further that he paid $100.00 to Weiler for making the appraisal.

■ The Court finds that pursuant to the power of attorney Redding is entitled to a fee for the recovery of the jewelry and for his out-of-pocket ex-

---

1. " . . . [T]he Federal rules determine such things as the commencement of action, pleading, joinder of actions and parties, use of discovery, mode of trial, and other procedural matters regulated in the Rules." 7 *Moore's Federal Practice*, 2d edition, ¶ 64.07[2] at 64–28 (1974); *Consumers Time Credit, Inc. v. Remark Corp.*, 227 F.Supp. 263 (E.D.Pa.1964).

2. The court in *Paxton v. Desch Building Block Co.*, 146 F.Supp. 32 (E.D.Pa.1956), applied the Pennsylvania rule prohibiting counterclaims in a replevin action. However, the court specifically pointed out that the parties had agreed that Pennsylvania law should govern the motion. *Paxton v. Desch Building Block Co.*, Id. at 38, n. 27.

penses in connection therewith, the total amount not to exceed 25 per cent of the value of the jewelry. The Court, which is sitting as the trier of fact, is required to make a finding to determine the value of this jewelry for the sole purpose of ascertaining the amount to which Redding is entitled under the power of attorney. We recognize that we must base our finding as to the value of the jewelry on the evidence offered at trial. *Avins v. Commonwealth*, 379 Pa. 202, 108 A.2d 788 (1954). However, as the trier of fact, we are not bound to accept the opinion of the expert witness. In *Ray v. City of Philadelphia*, 344 Pa. 439, 25 A.2d 145 (1942), the court said:

> Expert witnesses are not the jury. " 'They . . . cannot take the stand, and say such and such is the case, and then decide the case . . . any . . . expert testimony . . . is merely opinion testimony. . . . It . . . may be of value and it may be of no value, just as it appeals to you [the jury].' " *Commonwealth v. Shults*, 221 Pa. 466, 467, 468, 70 A. 823, 825. In all such matters the jury must be left to the free exercise of its own judgment. It cannot be bound by the opinion of the witness or the instruction of the court.

. . . . .

> The world is mad with opinions upon every imaginable subject, but fortunately we only have to take those we approve. And so it is with juries; they may reject in toto the opinion of any witness they disbelieve, and this whether the opinion is contradicted or not. *Id.* at 441–2, 25 A.2d at 146.

This same view was expressed by our Third Circuit in *Jones v. Nederlandsch*, 374 F.2d 189, 190 (1966), *cert. den.* 388 U.S. 911, 87 S.Ct. 2114, 18 L.Ed.2d 1349 (1967).

> For the opinion of an expert even if uncontradicted is not conclusive and a jury is not required to accept it. Such testimony must pass through the screen of the jury's judgment of credibility. *Sartor v. Arkansas Natural*

*Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Rhoades Incorporated v. United Air Lines, Inc.*, 340 F.2d 481 (3 Cir. 1965); *Wooley v. Great Atlantic & Pacific Tea Company*, 281 F.2d 78 (3 Cir. 1960). The value to be used as the basis for computing Redding's fee is the fair market value of the jewelry. It is well settled that the fair market value of property is the price at which the property would change hands between a willing buyer and a willing seller, neither being under compulsion to buy or sell. *Dempsey v. Stauffer*, 312 F.2d 360 (3d Cir. 1962); *United States v. 147.47 Acres of Land*, 352 F.Supp. 1055 (M.D.Pa.1972); *Union Nat. Bank v. Driscoll*, 32 F.Supp. 661 (W.D.Pa.1940). Although Weiler appraised the jewelry at $22,400.00, he offered to purchase it for only $3,630.00. He explained that the great discrepancy between the two figures reflects the difference between the jewelry's retail replacement value and its wholesale market value. This court finds that the fair market value of this jewelry lies somewhere between the appraisal figure ($22,400.00) and the two purchase offers ($3,800.00 and $3,630.00). We find that the value of this jewelry for the sole purpose of construing the terms of the power of attorney is $5,000.00. Accordingly, we find that Redding is entitled to a fee of $1,000.00 (20 per cent of $5,000.00) plus $100.00 as reimbursement for his expenses in connection with the appraisal.

■ Although the power of attorney provides that "Redding is entitled to 20 per cent of any amount collected or saved from falling into improper hands", we deny Redding's claim for a fee in connection with the bank account of $1,743.00 which bank account was in Wright's name. Redding bases his claim for 25 per cent of the bank account on the fact that he advised the bank not to release the sum on deposit to anyone who did not present the bankbook. We find that Redding did not perform any service in connection with the bank account which resulted in "any amount

collected or saved from falling into improper hands". There was no change in Wright's entitlement to his bank account.

This Memorandum and Order is in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.