# Hoober, Appellant, *v.* New Holland Water Company.

*Evidence—Competency of witness—Review by appellate court.*

1. Where the command or prohibition of a statute relating to the competency of a witness or the admissibility of certain testimony has not been violated, and no defined and recognized rule of evidence has been disregarded, an appellate court ought to be convinced that some substantial harm has been done to the party complaining before reversing a judgment on account of the rulings of the trial judge on questions of evidence merely.

*Waters—Diversion of water by water company—Injury to gristmill—Evidence—Opinion of witnesses.*

2. In an action against a water company to recover damages for injuries to a gristmill by reason of the diversion of waters of a stream, a witness may be permitted to give an opinion as to the market value

of the property as it was before the appropriation, if by his preliminary examination it is shown that he is qualified to give such an opinion; but he will not be permitted to express an opinion as to the value of the property after the water was taken, if his preliminary examination shows that he had not sufficient information on which to base such an opinion.

3. The competency of a witness is not to be conclusively determined by considering merely any one specific statement made by him in his preliminary examination. If the whole of his examination taken altogether shows that he is a competent witness, he should be permitted to give his opinion as to values.

4. In an action against a water company to recover damages for injuries to a gristmill caused by the appropriation of water of three springs which fed into the stream by which the gristmill was operated, it is not error for the trial judge to refuse to permit a witness for the plaintiff to state how many hours the mill could have been operated on the quantity of water which flowed through the springs on the day on which he made his measurements, where the evidence showed that the measurements of the witness were not taken under conditions that were normal, or that would exist during the periods when alone any injury to the operation of the mill was inflicted.

5. In such a case where there is evidence that a considerable amount of water escaped at the bottom of the dam or headrace or both, and the plaintiff's witnesses explain it by testifying that the dam and race were in good repair, and that the water which was visibly escaping without serving the mill was due largely to the existence of springs in the bottom of the dam and race, the defendant may offer proof that the dam and race were out of repair. Such proof is admissible as tending to prove that a mill property so out of repair that it could not utilize the water at hand, was not worth as much as the plaintiff's witnesses contended its value to be.

Argued Nov. 12, 1913. Appeal, No. 190, Oct. T., 1913, by plaintiff, from judgment of C. P. Lancaster Co., Jan. T., 1913, No. 76, on verdict for plaintiff in case of Abraham H. Hoober v. The New Holland Water Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Appeal from award of viewers. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

538   HOOBER, Appellant, *v.* NEW HOLLAND W. CO.

Statement of Facts—Opinion of the Court.   [56 Pa. Superior Ct.

Verdict and judgment for plaintiff for $100. Plaintiff appealed.

*Errors assigned* were various rulings and instructions set forth in the opinion of the Superior Court.

*E. M. Gilbert* and *C. E. Montgomery*, for appellant, cited: Hershey v. Kerbaugh, 30 Lanc. Law Rev. 305.

*William H. Keller*, with him *John A. Coyle*, for appellee, cited: Lee v. Springfield Water Co., 176 Pa. 223.

OPINION BY HEAD, J., April 20, 1914:

The plaintiff is the owner of a water power gristmill located on Mill Creek in Lancaster county. Some miles above and near the headwaters of the creek three springs rose on a tract of land called the "Baxter Tract." Under natural conditions the surplus water from these springs was gathered in a spring run which emptied into Mill Creek. The defendant water company, in the exercise of its corporate right, appropriated the water of these three springs and diverted it from its natural course to the use of its patrons and consumers. If the appropriation of this water worked any substantial injury to the plaintiff, as a lower riparian owner, the injury was of course a permanent one, and this proceeding was begun to ascertain the amount of the damages the plaintiff ought to recover. In such cases it is conceded the true measure of damages is the difference, if any, between the market price of the property before the appropriation and just after it as the property would be affected by that taking.

The market value of any particular piece of property, which has not been subjected to the crucial test of a public sale, is of necessity a matter of estimate or opinion. Witnesses who have a more intimate knowledge of the property, its condition, and its incidents, than the jury could have, even after a personal inspec-

tion of it, are permitted to express their opinions as to the value of the property before the appropriation and the extent to which that value has been impaired by the appropriation. In such cases, as in all others tried by a jury, the credibility of the witnesses is a matter of the first importance. In a case like, the present one, that credibility depends not merely on the truthfulness of a witness testifying to a fact, but in a larger degree upon the extent of his knowledge of the property and the soundness of his judgment in drawing the conclusions to which he is permitted to testify. It would therefore necessarily follow that the latitude to be permitted in the examination and cross-examination of such witnesses must, to a very considerable extent, be determined by the sound discretion of the trial judge. Where the command or prohibition of a statute relating to the competency of a witness or the admissibility of certain testimony has not been violated, and no defined and recognized rule of evidence has been disregarded, an appellate court ought to be convinced that some substantial harm has been done to the party complaining before reversing a judgment on account of the rulings of the trial judge on questions of evidence merely.

It ought to be clear enough that a particular witness may be qualified to give an opinion as to the market value of a property as it was before the appropriation, and yet be unable to express any conclusion of probative value as to the depreciation resulting from the appropriation. He may never have seen the property after the taking, and consequently would have no information on which to form a judgment as to the amount or extent of the injury resulting from the taking. It was because of this that the learned trial judge, after permitting a witness, Groff, to testify to the value of the plaintiff's property before the water was taken, properly declined to permit him to express any opinion as to its value afterwards.

The competency of a witness is not to be conclusively

determined by considering merely any one specific statement made by him in his preliminary examination. The witness often fails to properly apprehend the meaning of a particular question, and his answer, resulting from some mental confusion on that subject, is frequently not expressive of his real state of mind or of the knowledge he actually possesses. If the whole of his examination taken all together shows that he is a competent witness, he may be and should be permitted to give his opinion as to values. We are not able to say therefore that any reversible error was committed in the rulings of the trial judge complained of in the first five assignments of error.

It clearly appeared the supply of water on which the plaintiff's mill depended for its operations was intermittent, varying greatly according to season and weather. At certain times there was not only an ample supply of water for the use of the plaintiff but much that he could not use, and which necessarily passed over the breast of the dam down the stream. At such seasons of course no harm was done to the plaintiff by the appropriation of the water from the three springs. It was only during the periods when the water supply was short that he himself claims he suffered any injury. One witness for the plaintiff testified that on a particular day when the streams were full and the water was wasting over the breast of the dam, he had measured the flow from the three springs and estimated it to amount to about 450,000 gallons per day. There had been testimony tending to prove that when the mill was in full operation, both wheels running, several millions of gallons of water per day would be required. The witness in question was then asked to state to the jury how many hours the mill could operate on the quantity of water which he had stated was flowing from the three springs on the day he made his measurements. The learned trial judge sustained an objection to this question, and this ruling is the sub-

ject of the seventh assignment.   We are unable to see
that the exclusion of this proposed piece of evidence was
harmful error.   The measurements of the witness were
not taken under conditions that were normal or that
would exist during the periods when alone any injury
was inflicted, because, as stated, at the time the springs
were flowing to that extent, the plaintiff had no occasion
to use the water from them.   There was then at his
command in Mill Creek more water than he could use.
Moreover, it did not appear that the overflow from these
springs, considered by itself after it had flowed several
miles, would have been sufficient to operate the mill at
all.   Of course there might be times when the addition
of the overflow from these springs to the volume already
in Mill Creek might have given a sufficient head of water
to operate at least one wheel, when without the spring
water there would not have been sufficient.   It is at
the best a doubtful question whether the evidence sought
from the witness would not have been as likely to con-
fuse the real issue as to aid in its proper solution.   We
cannot therefore convict the learned court below of
error because of the exclusion of that testimony.

There was in this case, as in most of its class, a very
wide difference between the estimates of value furnished
by the witnesses on the one side and the other, and this
difference applied to both branches of the plaintiff's
case.   The value of his property before the appropria-
tion which he sought to establish was attacked as
being excessive and fanciful.   It appeared that at all
times a considerable amount of water was being per-
mitted to escape at the bottom of the dam or headrace
or both.   The plaintiff in chief, in endeavoring to sup-
port the conclusions of his witnesses, called upon them
to testify that the dam and race were in good repair
and that the water which was visibly escaping without
serving the mill was due largely to the existence of
springs in the bottom of the dam and race.   In reply
the defendant was permitted to introduce evidence, over

the objection of the plaintiff, that the dam and race were out of repair; that the water which was escaping came not from springs, as the plaintiff contended, but was the ordinary water flowing in Mill Creek. This testimony was received, as the learned judge below clearly and distinctly pointed out, not for the purpose of showing that the plaintiff could not recover unless he had his property in perfect order, but as tending to prove that a mill property, so out of repair that it could not utilize the water at hand, was not worth as much as the plaintiff's witnesses contended its value to be. In one portion of the charge the learned judge used the following language. "We say to you that the plaintiff has the right to use his property as he likes. He can keep it in good repair or he can let it go into decay; that is his own business. But the jury may find that it is not as valuable in the market if it is not in good repair as if it were in good repair. Then too the defendant company cannot be charged with the loss of water power of this mill if the owner allows his dam and race to get into a leaky condition, and the impairment to his water power is attributable to this cause instead of the taking of the quantity of water stated by the appropriation. If the taking of the water by the water company, however, under this proceeding, impairs the market value of the mill, the plaintiff is entitled to receive the amount which will cover that impairment, that is, the depreciation of the property by the taking, and under such circumstances the jury should find a verdict for that amount." Even if we concede that one sentence quoted, considered by itself, might be regarded as exhibiting a tendency to mislead as to the true issue, the charge as a whole leaves no reasonable ground for the conclusion that it produced in the minds of the jury any confusion of ideas as to the simple question they were to determine. Moreover, at the conclusion of the charge the learned judge read to the jury, and fully answered to the satisfaction of the plaintiff, three sep-

arate points specifically directed to the proper consideration of the evidence we have been discussing. We quote the second: "(2) There is no duty or obligation upon the part of the plaintiff to rebuild his dam breast or mill race or put his dam breast or mill race in any other than a good condition of repair such as is the condition and repair of dam breasts and mill races of that character, namely, a dam breast built of earth and stone and a mill race with earth walls or sides. (a) That point I think we will affirm because we have already stated to you the plaintiff can do what he pleases with his property. There is no duty about that. The only way in which these matters enter into the case is in ascertaining the condition of the property so that its market value before and after the appropriation can be properly determined, etc."

Viewed in the light thus plainly stated to the jury, we cannot see any sound reason for the conclusion that there was harmful error in the admission of the evidence complained of in the remaining assignments. An examination of the case of Lee v. Springfield Water Co., 176 Pa. 223, will reveal ample authority for the admission of evidence of the character referred to, and this not because the plaintiff, by reason of the leaky condition of his dam or race, was to suffer without compensation the loss of some of the power on which he had a right to depend; but because, as was said by Mr. Justice WILLIAMS in the case referred to: "This was a competent line of proof for the defendant by way of reply to the exaggerated estimates of some of the witnesses called by the plaintiffs." We have already adverted to the charge of the court in relation to this line of testimony, and in our judgment the entire charge taken as a whole clearly and fairly presented to the jury the real issue in controversy and directed their attention to the ascertainment of the fair market value of the property before the appropriation, and its like value immediately afterwards as affected by that ap-

propriation.   This difference they were told was the true measure of the plaintiff's recovery.   After an attentive study of the entire record, we conclude the case was well tried and that the judgment entered on the verdict has not been successfully assailed.   The assignments of error are all overruled.

Judgment affirmed.