# Thomas Lee and Smith Longbottom, trading as Lee & Longbottom, *v.* The Springfield Water Company, Appellant.

*Eminent domain—Appropriation of water—Measure of damages.*

Where part of the water of a creek is taken by a water company under the right of eminent domain for the supply of its waterworks, and mill owners on the stream below the point at which the water is taken are deprived thereof, the true measure of damages is the depreciation in value of the mill property as affected by the taking. The question is how much less it was worth to the owner or to a bona fide purchaser after the appropriation of the water daily pumped out of the stream than it was worth with the stream flowing in undiminished volume.

*Measure of damages— Practice, C. P.*

The damages to the mill owners are not to be assessed upon what might be, but upon what really is, the value of the water to them and their loss in consequence of its withdrawal. In such case it is error for the court to charge the jury: " Now it may be there are other uses to which the water can be applied . . . . ; for instance, if they had seen proper to erect waterworks there and used the water by distributing it among the neighbors ; they had the right to use it, and then it would be wrong to take it away from the plaintiffs. While it flowed through their property, they had the same right to pump it and distribute it among their neighbors as the Springfield Water Company has. . . . I only say that in order to call your attention to the fact that there are other uses to which they could apply this water. Whatsoever they are you may consider, but they are not to be speculative."

*Charge of court—Evidence—Practice, C. P.—Measure of damages.*

In such case it is error to charge the jury that their verdict " should not be less than the highest amount the defendants have expressed themselves willing to pay. It ought not to be much higher than the lowest estimate put upon it by the plaintiffs' witnesses." These considerations may be taken into account but they are in no sense controlling.

*Evidence.*

A witness who has lived many years not far from the property in question, has examined it on several occasions with care in order to fix its value as an appraiser, and has some general knowledge of the sales of mill properties and the prices at which they have changed hands along the stream, is competent to testify as to its value, although he has never gauged the flow of the stream or made a special examination of the water power.

A question asking a witness to give his opinion upon the depreciation in value of property, which arbitrarily assumes that the loss was con-

fined to a single item and excludes all other elements of loss is properly rejected.

A real estate agent, who lived for many years near by, who testified that he knew the value of property on the creek in question and could form a reliable judgment as to the value of the plaintiffs' property, and how that value was affected by the abstraction of the water in question from the creek, is entitled to testify, and is not disqualified by the fact that his opinion is based on the theory that but one element of loss is involved in the case.

Argued Feb. 12, 1896. Appeal, No. 94, Jan. T., 1896, by defendant, from judgment of C. P. Delaware Co., Sept. T., 1893, No. 83, on verdict for plaintiffs. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Appeal from award of jury of view, assessing damages for taking water from stream. Before CLAYTON, P. J.

On the trial the defendant offered to prove by Howard W. Widener, a manufacturer engaged in business in Chester for a number of years, and conversant with the manufacturing business and acquainted with the values of mill properties on Crum creek, who has known the property in question for ten or fifteen years and knows its value, what in his judgment is the difference in value of the property by reason of the condemnation as gathered from what it will cost to reproduce the power lost by this abstraction of water.

The Court: Supplemented by steam.

Mr. Broomall, for defendant: By steam, and there are no elements that enter into the difference of value in his judgment other than the cost of producing the depleted power by steam at that point.

The Court: I will permit you to prove what it will cost to supplement it by steam, but he cannot give the value before and after. Exception. Bill sealed for defendant. [4]

Offers by defendant of the testimony of William C. Gray and Samuel Greenwood sufficiently appear in the opinion of the Supreme Court.

The court charged the jury, among other things, as follows:

Now it may be that there are other uses to which the water can be applied. There ought not to be any guessing about it, but if there are such uses, the plaintiffs ought to have compen-

sation for them. But as I say we are not to guess at that, it is for them to show you what they are. You are not to guess, you are not to speculate as to what can be done with this water, but they would have the right to any reasonable use to which it can be applied. [For instance, if they had seen proper to erect waterworks there and sell water by distributing it among their neighbors, they had the right to do it, and then it would be a wrong to take it away from them.] [9] While it flowed through their property they had the same right to pump it up and distribute it among their neighbors as the Springfield Water Company has. Why? Because there are no riparian owners below them, and if there are, they are the only ones that can complain. If there were none they could take the water and distribute it without complaint. I don't know whether there are or not. . . .

[The verdict ought not to be less than the highest amount that the defendants have expressed themselves as willing to pay; what that is you get from the witnesses. I don't exactly remember what it was, but I think the highest amount fixed by the defendant's witnesses was something over $2,000. The verdict ought not to be less than that. It ought not to be much more than the lowest estimate put upon it by the plaintiffs' witnesses.] [11]

Verdict and judgment for plaintiff, for $8,625.

*Errors assigned,* among others, were (2, 3, 4, 7) rulings on testimony; (9, 11) charge of the court, quoting the bill of exception and instructions.

*Edward H. Hall,* with him *Isaac Johnson* and *William B. Broomall,* for appellant.—Coal Co. v. Ingham, 36 Pa. 194; Railway Co. v. Vance, 115 Pa. 325; Clark v. R. R. Co., 145 Pa. 438; Gas Co. v. R. R. Co., 167 Pa. 6.

*V. Gilpin Robinson* and *George E. Darlington,* for appellees.—If a question works no harm it is not subject of error: Haupt v. Haupt, 15 Atl. Rep. 700; Worrall v. Pyle, 132 Pa. 529; Hoar v. Leaman, 15 Atl. Rep. 716; Shepherd v. Busch, 154 Pa. 152. If the remarks of the court are not calculated to mislead the jury and do not mislead there is no ground for reversal: Lewis v. Rattigan, 138 Pa. 308; Bedell v. Errett, 11

Atl. Rep. 571 ; Diehl v. Lee, 9 Atl. Rep. 865. As to liability and measure of damages : Water Co. v. Iron Co., 84 Pa. 279 ; Miller v. Water Co., 148 Pa. 429; R. R. Co. v. Miller, 112 Pa. 41 ; Clark v. R. R., 145 Pa. 449; Lord v. Water Co., 135 Pa. 130 ; Haupt's App., 125 Pa. 211.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896 :

The defendant had seized a part of the waters of Crum creek for the supply of its waterworks. The plaintiffs are mill owners on the same stream and below the point at which the water is taken. The object of this proceeding is to ascertain the damages sustained by the plaintiffs by reason of the appropriation of a portion of the water of the stream that had previously flowed through their property and been used by them to aid in propelling their machinery. The true measure of damages to be applied in all cases of a taking by virtue of eminent domain is involved in no doubt. It is easy of application. It is the depreciation in value of the property affected by the taking. Where land is taken, this has been said so frequently that it would be a work of supererogation to cite the cases in which the doctrine has been stated and applied. It was applied in Miller v. The Windsor Water Company, 148 Pa. 429, where, as in this case, a water company had appropriated water, and a lower riparian owner complained that he was injured by the appropriation. It is the proper measure of the plaintiffs' damage in this case. The jury should inquire what the property affected was fairly worth immediately before the water was appropriated and what it was worth as affected by the appropriation. The difference, if any, is the loss actually sustained, and therefore the measure of the plaintiffs' right to recover damages. In this case the water company has limited its appropriation of water from Crum creek to two millions of gallons each day. This is relatively but a small portion of the water of the stream, and during a portion of the year produces no appreciable effect upon the plaintiffs' water power. The water wheel in use at their mill has a capacity about forty-five horse power. The steam engine which supplies the remainder of the power required has a capacity of nearly four times as great. During eight months of the year the stream still furnishes water sufficient to drive the water wheel to its full capacity ; but during

the dry season the withdrawal of two milllions of gallons per day is a withdrawal of about two and one half horse power from the water wheel and during much of that time reduces the power of the wheel correspondingly. How much did this loss of water during the dry season depreciate the value of the plaintiffs' property? The defendant contended on the trial that this question was best answered by ascertaining the cost of replacing the lost water power by steam, and directed its testimony largely to this question. This was a competent line of proof for the defendant by way of reply to the exaggerated estimates of some of the witnesses called by the plaintiffs, but standing alone it did not furnish the correct measure of damages.

The attention of the jury should have been drawn strictly to the question, how much has this property been reduced in value by reason of the appropriation and withdrawal from the stream of the two millions of gallons of water? Anything tending to obscure, or to divert attention from, this well settled measure of damages should have been avoided. The ninth assignment of error complains of the following instruction in the charge of the learned judge. He said, "Now it may be there are other uses to which the water can be applied. . . . ; for instance, if they had seen proper to erect waterworks there and used the water by distributing it among the neighbors; they had the right to use it, and then it would be wrong to take it away from the plaintiffs. While it flowed through their property, they had the same right to pump it and distribute it among their neighbors as the Springfield Water Company has . . . . I only say that in order to call your attention to the fact that there are other uses to which they could apply this water. Whatsoever they are, you may consider, but they are not to be speculative." This was probably intended as an illustration tending to simplify the work of the jury, but it had an entirely different effect. The water had been taken as a supply for the water company by a corporation standing in the place of the commonwealth, and in the exercise of the right of eminent domain. The question for the jury was what injury have the plaintiffs sustained? If they had been using the water for other purposes, the injury might have been greater than it was. If they had not used it at all it would have been less. Their damages were not to be assessed upon what might have been, but upon what really was,

the value of the water to them and their loss in consequence of its withdrawal. How much less was the plaintiffs' property worth to the owner or to a bona fide purchaser, after the appropriation of two millions of gallons of water daily from the stream, than it was worth with the stream flowing in undiminished volume?

The direction in regard to the amount of the verdict is also objectionable. The learned judge told the jury their verdict " should not be less than the highest amount the defendants have expressed themselves willing to pay. It ought not to be much higher than the lowest estimate put upon it by the plaintiffs' witnesses." A party may be willing to pay more than he should in order to avoid or to end litigation. The duty of the jury is to fix the true sum necessary to compensate the plaintiff. In doing this they are helped, but not controlled, by the estimates of witnesses, or the efforts of parties to buy their peace. All these considerations may be taken into account but they are in no sense controlling.

Another subject of complaint is the refusal to permit Col. Gray, a witness, to speak of the value of the plaintiffs' property after the appropriation of water made by the defendant. He testified that he had lived in Chester not far from the plaintiffs' property for forty years, and that he had examined the property on several occasions with some care. On two of these occasions his examinations of both the real and personal property had been made for the purpose of fixing its value as an appraiser. He had been one of the viewers by whom the damages had been assessed in this case. He had some general knowledge of the sales of mill properties and the prices at which they had changed hands along this stream. He testified to the value of this property before the taking of the water, but when he was asked to give its value as it was affected by the taking, he was held incompetent to answer. So far as we can gather from the record, this ruling rested on the fact that he had never gauged the flow of the stream, and had made no " special examination " of the water power at the plaintiffs' mill. But he had made a general examination, knew the amount of water withdrawn from the stream, the fact that in the dry season it would take about two and a half horse power from the available power of the water wheel, and had formed and expressed

a judgment as to the amount of the plaintiffs' damages as a viewer in this proceeding. He was certainly qualified to express an opinion about the effect of the withdrawal of the water upon the value of the plaintiffs' property and should have been permitted to answer the question. On the other hand, the refusal to permit Howard Widener to answer which forms the burden of the fourth assignment seems to us to have been entirely proper. He was asked to give his opinion upon the depreciation in value of plaintiffs' property by reason of the taking complained of, based on his estimate of what it would cost to supply the two and a half horse power during the dry season by steam. We have no doubt that the reason for excluding the answer was that the form of the question excluded all other elements of loss from the consideration of the witness and really asked only after the cost of the additional steam power and arbitrarily assumed that the loss was confined to this single item. The seventh assignment presents a different question. The witness Greenwood was a real estate agent in the city of Chester and had been such for many years. He testified that he knew the value of property on Crum creek, and could form a " reliable judgment as to the value of the plaintiffs' property." He was asked if he could form " a reliable judgment as to how that value is affected by the abstraction of two millions of gallons of water daily, and uniformly from the creek," and he replied " I think so." The court then interposed the following question, " Well, upon what formula would you base your estimate of that ? " He replied that in his belief the value of the property was diminished only to the extent of the cost of supplying the lost water power. The court thereupon excluded the question. The difference between the position of this witness and that of Widener consisted in this : In Widener's case, the question limited the view of the witness, and in this case it did not. The question was proper. It reached after the judgment of the witness upon the extent of the depreciation of the plaintiffs' property. If he believed that depreciation was fairly measured by the cost of supplying the lost water power the defendant had a right to his answer. Its value was of course for the jury, but it was competent because it was an expression of the judgment of the witness. Widener was not permitted to answer because the question was improperly framed for the

purpose of getting an opinion about the extent of depreciation from a witness competent to form one. Greenwood was not permitted to answer not because of any trouble with the question but because the court had learned what his answer would be, and objected to the expression of an opinion for the reason that he did not agree with the witness as to the basis on which the opinion should be formed. Whether the basis was correct was not for the court, but for the jury, to determine.

The judgment is reversed and a venire facias do novo awarded.