# Hoober *v.* New Holland Water Company, Appellant.

*Waters—Injury to riparian owner—Damages—Evidence.*

1. Where it is proved that damage has resulted from an injurious trespass such as to a lower riparian owner from the taking of water, and the only uncertainty is as to the exact amount thereof, such uncertainty is not ordinarily ground for refusing to allow any damage at all, if the evidence furnish a basis from which a reasonable calculation can be made.

2. A permanent injury will not be presumed, and where one seeks to recover damages on that theory, he must aver and prove that his property is permanently injured, or at least that the condition complained of is reasonably certain to be permanent.

3. The loss of power to a mill resulting from the subtraction of water from a creek on which the mill is situated, is not a permanent injury, and the measure of damages for the injury is the cost of restoring the property to its former condition. In such a case the person causing the injury will not be permitted to show the cost of a different kind of power, such as that produced by a gasoline engine or electric motor, as a method of determining his liability. The person injured is under no obligation to install another kind of power, but he may abide by the conditions resulting from the loss of the water, and demand that he be compensated to the extent of his loss.

Argued Nov. 11, 1909. Appeal, No. 120, Oct. T., 1909, by defendant, from judgment of C. P. Lancaster Co., Feb. T., 1906, No. 7, on verdict for plaintiff in case of A. H. Hoober v. New Holland Water Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to a mill property by the diversion of water. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the court refused under objection and exception to permit the defendant to show what it would have cost to supply by a gasoline engine or an electric motor, the power lost by the defendant's taking of water from the spring on his property.

The court charged in part as follows:

It will, from the case as presented, be a somewhat difficult task for you to arrive at a conclusion that will be just and fair between these parties. That end, however, you must strive to reach. It is not contended that this mill ran every day or every hour of the day during the year, with the full head of water, or that it ever did before the New Holland Water Company constructed its plant. At times, the stream may have been full and the mill had plenty of water without regard to what was taken by the defendant company; and at other times, the water was doubtless low, owing to dry weather, and the same head at the mill could not be secured. Where a stream is so large that the diversion of part of it does not interfere at all with the use that a man is making of the water as it passes through him, in such a case, if one above on the stream takes out water to any extent, but there is still left enough for his neighbor, that neighbor is not harmed. And so here, for all times when the water of this stream was sufficient for the purpose to which Mr. Hoober put it, even if the New Holland Water Com-

pany appropriated a part of the water above, he suffered no damage by reason of that appropriation. [But there may have been times when the water was at such a stage that the appropriation by the water company lessened his power.] [3]   Mr. Hoober, having no property in the water, was not entitled to the value of it; but he was entitled to its use; and as he was deprived of that use by the defendant in the running of his mill he is entitled to be compensated.   [In other words, whatever he has lost by reason of the diminution of the power and his ability thereby to run his mill and make flour as it was accustomed to be run before the appropriation of the water of the stream by the New Holland Water Company, that damage, figured out by you in dollars and cents, is the proper compensation to him for his loss.] [4]

Verdict for plaintiff for $940.75, upon which judgment was entered for $500, all above that sum having been remitted.   Defendant appealed.

*Errors assigned* were (1, 2) ruling on evidence; (3, 4) above instructions, quoting them.

*John A. Coyle,* of *Coyle & Keller,* with him *A. W. Snader,* for appellant.—We respectfully submit that where a plaintiff is seeking to recover damages for a loss of power and is endeavoring to compute the damage which he claims to have sustained on the basis of the effect which he alleges the abstraction of such horse power had upon the output of his mill, it is entirely competent in a suit of this character to show that the consequences of such abstraction could have been obviated at much less expense and the lost horse power supplied by some auxiliary means, such as gasoline, steam, etc.: Irving v. Media Boro., 10 Pa. Superior Ct. 132; Standard Plate Glass Co. v. Water Co., 5 Pa. Superior Ct. 563; Rabe v. Coal Co., 213 Pa. 252; Hogg v. Water Co., 168 Pa. 456; Lee v. Springfield Water Co., 176 Pa. 223; Hoffman v. R. R. Co., 39 Pa. Superior Ct. 47.

The evidence was admissible in line with the general principle that the measure of damages for injury to real property is the cost of remedying the injury, unless that exceeds the value of the land: Robb v. Carnegie, 145 Pa. 324; Lentz v. Carnegie, 145 Pa. 612; Gift v. Reading, 3 Pa. Superior Ct. 359; Welliver v. Canal Co., 23 Pa. Superior Ct. 79; Eshleman v. Martic Twp., 152 Pa. 68.

The plaintiff failed to show by any calculation supported by the evidence that he was damaged in any sum approaching the verdict of the jury or even the amount of the judgment as reduced by the court.

*W. U. Hensel,* with him *A. E. Burkholder,* for appellee.

OPINION BY HENDERSON, J., July 20, 1910:

The defendant appropriated water from three springs which were tributary to a creek on which the plaintiff owned and operated a grist mill, all the power for which was supplied by the creek. The defendant owned the land on which the springs were situated and the water was diverted without condemnation proceedings. This action was for damages resulting from the subtraction of the water and the consequent loss of power at the plaintiff's mill. The taking of the water is admitted and the plaintiff's right of action is not denied. The contention is that the plaintiff did not establish his damage by definite testimony and that the court erred in refusing to admit evidence offered by the defendant to show the cost of producing power with a gasoline engine or electric motor. The evidence was contradictory as to the amount of water taken from the springs but it was definite on each side and as shown by the plaintiff amounted to a quantity sufficient to produce one-fifth of a horse power. It also appeared that the operation of the flour mill required five and seven-tenths horse power and the feed mill considerably less, and that the capacity of the mill when in continuous operation was eighteen barrels of flour in twenty-four hours, but that the annual production was from 1,200

to 1,500 barrels on which the profit was about $1.00 a barrel. Evidence presented for the plaintiff shows that there was generally a shortage of water and that it was necessary to shut down the mill as often as twice a week because of lack of water, except when there was a heavy rain or a freshet from melting snow. It also appeared that the loss of power which would have been furnished by the water taken by the defendant would have made it possible to operate the mill at times when without it flour could not be ground. There was a consequent loss not only of the power measured by the water withdrawn but the loss of the use of the whole mill for many days during the four years covered by the declaration, and the damage was not simply the loss of power but the loss of the use of the property. It cannot be logically contended, therefore, that the plaintiff is only entitled to recover to the extent of the proportion which the water taken bore to the whole quantity used in propelling the mill. The jury could have well concluded from the evidence that there was usually a deficiency of water at the mill and that the whole quantity taken by the defendant could have been effectually used in increasing the power necessary to turn the mill wheels. There would still have been a large deficiency, but the volume conveyed away in the defendant's pipe would have furnished an accumulation in the dam which would have added its weight to keep the mill going. For just how long a period in any instance there was such a volume of water in the creek that the outflow of these springs was not needed at the mill was not shown in the evidence, but that it was for brief periods is plain and in the nature of the case it could not be expected that exact figures could be given on that subject nor is it necessary that they should be. Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is as to the exact amount thereof such uncertainty is not ordinarily ground for refusing to allow any damage at all if the evidence furnish a basis from which a reasonable calculation can be made: 3 Sutherland on Damages,

sec. 672; Hooper v. Story, 155 N. Y. 171. A part of the damage claimed in Hogg v. Water Co., 168 Pa. 456, was the loss of pasture caused by lack of water and the evidence was less definite there than was produced by the plaintiff here. It is impossible to arrive at nice calculations in a case of this character, but we think there is evidence that all of the water taken could have been advantageously used by the plaintiff for a very large part of the period involved, and as the court reduced the amount of the verdict nearly one-half the defendant has little ground of complaint.

The injury complained of was temporary and the measure of damages appropriate in the case of a permanent injury does not apply. A permanent injury will not be presumed and where one seeks to recover damages on that theory he must aver and prove that his property is permanently injured or at least that the condition complained of is reasonably certain to be permanent: Hoffman v. Coal Co., 16 Pa. Superior Ct. 631. In the case of a temporary injury the question is, What will it cost to restore the property damaged to its former condition? This was the rule stated in Lentz v. Carnegie, 145 Pa. 612, and such is the effect of all of our authorities. This restoration is not the providing of a substitute for the property wrongfully destroyed but the putting of the injured party in his original condition. It is manifest therefore that the offer to prove what it would cost to produce a horse power by a gasoline engine or electric motor was not competent. Neither of these machines was available to the plaintiff. His mill was a water mill and he was not under legal obligation to install electric or gasoline power. If the defendant took away the means by which he operated his mill he could abide by the conditions and demand that he be compensated to the extent of his loss. Moreover, there was no offer to show what it would cost to install the substituted power or that it was at all practicable, taking into consideration the condition and character of the plaintiff's property, without an outlay altogether out of pro-

portion to the end to be accomplished. If the plaintiff instead of accepting the situation as produced by the defendant had supplied the lost power by securing a new water supply or introducing a different method of propelling his machinery he might have shown the cost of this change as was apparently done in Lee v. Water Co., 176 Pa. 223, and in that event it would have been permissible for the defendant to show that the plaintiff's figures as to cost were extravagant, but we do not find any case which supports the position that the defendant may introduce evidence of the cost of a different kind of power as a method of determining his liability. After a careful consideration of the case we do not find such support for the plaintiff's position as to justify a reversal.

The judgment is affirmed.