## Hazleton, Appellant, *v.* Lehigh Valley Coal Company et al.

Argued October 1, 1940. Before MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*John H. Bigelow,* City Solicitor, and *George I. Puhak,* with them *John E. Cotsack,* Assistant City Solicitor, for appellant.

*Adrian H. Jones,* with him *S. W. Rhoads,* for appellees.

OPINION BY MR. JUSTICE MAXEY, October 28, 1940:

The City of Hazleton filed a bill in equity, praying for an injunction to restrain defendants from engaging in the mining by "stripping operations" of coal underlying certain alleged city streets. The Lehigh Valley Coal Company is the owner of the coal and C. Henry Altmiller

is the owner of the surface of a certain plot described in the bill and located between Cedar Street on the west, Poplar Street on the east, Elm Street on the north and Beech Street on the south. The plot is three hundred forty feet along Poplar and Cedar Streets and four hundred twenty feet along Beech and Elm Streets, and is embraced in what is known as squares 172 and 179.

Plaintiff avers in its bill that defendants propose to remove the entire surface overlying the veins and seams of coal in said tract; that "such removal will result in destroying the public highways known as Birch Street and Woodward Court and in depriving the general public and the City of Hazleton itself of the proper use and enjoyment of the said public highways"; that "in the course . . . of said stripping operations. . . . Altmiller [as a mining operator and engineer] proposes to use dynamite and other high explosives . . . in quantities sufficient to blast the coal and rock lying beneath the surface" which "will necessarily disturb the peace and tranquillity of the said neighborhood as a residential district"; and that "by reason of the destruction of the said highways, the dissemination of dust and dirt, the creation of noxious gases and odors, the probability of damage to the structures erected in close proximity to the proposed stripping operations, the same will constitute, if permitted, a common nuisance prejudicial to public safety, health and general welfare."

Defendants agreed to maintain the status quo as to the alleged highways until the court below could hear the evidence. Extensive testimony was taken on the motion for preliminary injunction. Defendant coal company in its answer denied plaintiff's contention that "it is not the owner of the coal underlying any part of said described premises," and averred "that the alleged Birch Street and Woodward Court over the said described premises are not public streets of the City of Hazleton and have never been public streets of [that]

city . . ., and further that for the last twenty-eight years the entire said described premises have been used as a play-ground for children under the auspices and expense of private individuals or associations;" denied the threatened nuisance and danger to the surface and the inhabitants and averred that the stripping would be done in such manner as not to cause injury or danger to property or individuals on the surface.

In 1839 the Hazleton Coal Company, predecessor of the Lehigh Valley Coal Company, was the owner of all of the lands which subsequently became incorporated within the Borough of Hazleton, and Birch Street and Woodward Court were laid down on the original map or plan of Hazleton Borough, now the City of Hazleton. This first map of the city streets has been adopted by the city and was produced from the city's archives. Birch Street and Woodward Court are consistently recognized and mentioned in both old and in recent deeds in that section of the city. The deeds contain a reservation of rights to the "Hazleton Coal Company, their successors and assigns," to mine the coal and other minerals "under the lot herein conveyed, . . . subject to the condition that the earth covering such coal or other minerals shall not be in any manner cut, broken or displaced and that every damage which may be done to the said lot or the buildings erected thereon by the exercise of the mining privileges herein reserved shall be made good by said Hazleton Coal Company."

The question here turns on whether or not what plaintiff avers in its bill to be public highways are in fact public highways. As to this the court below said: "Birch Street and Woodward Court have never been adopted as public highways through any formal action of the city but plaintiff contends they have been used for a great many years by the public for pedestrian and vehicular traffic. However, neither Birch Street nor Woodward Court nor any other thoroughfare in the neighborhood actually traverses or extends into the plot to be used for the stripping mining (except on paper).

The plot has for many years been used as a playground. . . . There is no convincing evidence of continuous public user of said highways, as such, within, over or through the plot, along such theoretic extensions of Birch Street and Woodward Court; which, are, for the purpose of this case at least and under the evidence, merely 'paper' extensions of these thoroughfares."

The chancellor denied the injunction asked for and the court in banc after exceptions were filed concurred in it, saying, inter alia: "Specifically, it was found, after a painstaking review of the testimony and of the authorities, that the following prerequisites to plaintiff's right to the relief sought has not been established: '(1) That the public streets claimed by plaintiff to be in danger from the stripping mining traverse the affected area, have been adopted by the city, actually laid out on the ground or have been subject to continuous public use as streets over plaintiff's plot; (2) that the proposed stripping mining will damage the surface of the streets and adjoining properties or cause danger or serious disturbance and injury to residents; and (3) that the threatened danger, irreparable damage and nuisance as a result of the proposed stripping operations are imminent.' " This appeal followed.

It is the established rule that "on an appeal from a decree which refuses, grants or continues a preliminary injunction, the appellate court will look only to see if there are any apparently reasonable grounds for the action of the court below, and will not further consider the merits of the case, or pass upon the reasons for or against such action, unless it is plain that no such ground existed or that the rules of law relied on are palpably wrong or clearly inapplicable": *Lesher v. Thomas S. Gassner Co.*, 285 Pa. 43, 131 A. 657.

Findings of fact by a chancellor which are approved by the court in banc have the force and effect of a verdict of a jury and will not be disturbed if there is evidence to support them: *Malanchuk et al. v. St. Mary's Greek Catholic Church*, 336 Pa. 385, 386, 9 A. 2d, 350.

In the instant case the evidence fully sustains the finding that the court based its decision on, to wit, that the streets in question have never become public streets of the plaintiff city. The photographs in this case showing the "playground plot" which plaintiff contends the alleged streets traversed are in themselves sufficient to negative plaintiff's contention that these "streets" traversed this plot and were used as such by the public. When Cedar and Poplar Streets, which run at right angles with Birch Street, were paved and curbed in 1922 and 1925, between Beech Street and Elm Street, which run parallel with Birch, both the paving and curbing was done right across Birch Street and the city billed the Lehigh Valley Coal Company, owner of the playground plot, and the company paid for the paving and curbing without any deduction for the width of Birch Street. The inference from this is that Birch Street was not actually laid out or in fact exists *at this point.*

It is the law that the placing of a street on a city plan confers no right to the use of the land as a highway upon anyone. Such a street has no existence except upon paper: *Patterson, Executrix, v. Peoples Natural Gas Co.,* 172 Pa. 554, 560, 33 A. 575. See also *Milford Boro. v. Burnett,* 288 Pa. 434, 136 A. 669. The Act of May 9, 1889, P. L. 173, provides in section 1 as follows: "That any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out."

We agree with the court below that the City of Hazleton, the sole plaintiff below, did not establish any right to the injunction prayed for.

The decree is affirmed at appellant's cost.