## Morrissey, Appellant, *v.* Department of Highways.

Argued September 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Louis F. Floge,* with him *Schnader, Harrison, Segal & Lewis,* for appellants.

*George R. Specter,* Assistant Attorney General, with him *John E. Walheim,* Special Assistant Attorney General, *Robert W. Cunliffe,* Assistant Attorney General, *John R. Rezzolla,* Deputy Attorney General, and *Ed-*

*ward Friedman,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, January 20, 1967:

This appeal lies from the entry of a judgment on a verdict rendered in a condemnation case in the Court of Common Pleas of Philadelphia County. While the appellant-condemnees raise alleged trial errors, the real thrust of their argument is that, by reason of such errors, a totally inadequate verdict resulted.

James B. Morrissey and Mary Morrissey, his wife, were the owners of, and James B. Morrissey, Inc., was the lessee of, [condemnees], a 22.17 acre tract of land located on the southeasterly side of Frankford Avenue between Linden and Carwithan Avenues in Philadelphia. Functionally, this tract consisted of two parcels: one parcel [Parcel 1]—, consisting of approximately 17 acres located where the tract adjoins Carwithan Avenue—, is used as the office, equipment yard and place of business of the lessee-condemnee; the other parcel [Parcel 2]—, consisting of approximately 4.5 acres located where the tract adjoins Linden Avenue—, is zoned for residential purposes and not used by the lessor-condemnees.

Two driveways gave access to Parcel 1 from Frankford Avenue but, by reason of Parcel 2 being zoned for residential purposes, no access was available to Parcel 1 from Linden Avenue. In 1910, by *ordinance,* Carwithan Avenue was legally opened by the City as a street. However, Carwithan Avenue was not paved, graded or physically improved as a street; a fence had been erected by condemnees along the Carwithan Avenue side of Parcel 1 in which fence there was a gate— not regularly used—offering access to Carwithan Avenue.[1]

---

[1] The roadbed of Carwithan Avenue was partly occupied by a dwelling house and garage and was bordered by trees.

On November 30, 1960—in connection with the construction of an exit from the Delaware Expressway—the Commonwealth of Pennsylvania condemned a portion of Parcel 1. The land actually taken consisted of .67 acres of that portion of Parcel 1 which adjoined Carwithan Avenue and extended from Frankford Avenue to the southeasterly limit of condemnees' property and, by reason of such taking, no access whatsoever was available from Parcel 1 to Carwithan Avenue.[2]

After a trial in Court of Common Pleas No. 10 of Philadelphia County, the jury returned a verdict for condemnees in the amount of $36,400, consisting of property damages of $28,000 plus $8400 detention damages. Motion for a new trial having been refused, judgment was entered on the verdict.

Condemnees present four issues on this appeal: (a) that the trial court erred in charging the jury that condemnees had the burden of proving that the amount of damages was greater than the Commonwealth's evidence showed; (b) that the trial court erred in admitting into evidence testimony of Commonwealth experts who considered Carwithan Avenue a "paper street" the access rights to which were of slight value and then refused to instruct the jury that, even though the access rights may not have been used or regularly used, the taking resulted in recoverable damages; (c) that the jury erred in disregarding the physical facts and credible evidence that the buildings remaining on Parcel 1 could not be used as before the taking; (d) that the verdict was inadequate.[3]

The trial court, inter alia, charged the jury: "As I have stated to you previously, the sole issue here is the

---

[2] This loss of access constitutes a principal item of condemnees' claimed loss.

[3] The board of view had awarded property damages of $50,000 and detention damages of $11,700. The Commonwealth appealed this award.

extent of damages suffered by the plaintiff. The State doesn't claim that there were no damages. In fact, their expert witnesses have testified that there were damages.

"The State disputes the amount of damages to the extent that the plaintiff is claiming damages in excess of that testified by the State's witnesses. The plaintiff has the burden of proof, must prove by a fair preponderance of the credible evidence, that the damages are greater than that which the State's evidence shows.

"By a fair preponderance of the credible evidence, I mean that their evidence, plaintiff's, that the damages were greater than what the State says, must be more convincing to you even though by a very slight margin, than the evidence to the contrary." Condemnees excepted to this portion of the charge. The following colloquy between the court and condemnees' counsel then took place: "By Mr. Floge: I think you stated— I may be wrong—the burden is on the plaintiffs, and that we must prove damages greater than what the State proposes. I agree the burden of proving is upon us, but the matter of damages, it's not up to us to prove that the damages were greater than what the State proposes. By the Court: Well, you have the burden of proving the damages. By Mr. Floge: Burden of proving the damages. By the Court: I will correct that, and charge the jury in accordance to what you suggested, that the burden of proving the damages is on the plaintiff. Is that satisfactory, Mr. Floge? By Mr. Floge: Yes, sir. By the Court: Very well." [4]

Having examined the charge in its entirety, we are of the opinion that the court erred in instructing the jury that the condemnees had the burden of proving

---

[4] Commonwealth claims such colloquy resulted in a waiver of any error. Very obviously, there was no such waiver.

that their damages were greater than the damages testified to by the Commonwealth.

The Commonwealth produced two witnesses, as experts, to testify to what damages *in their opinion* the condemnees had been subjected by the taking of a portion of their land. Both gave *opinion* evidence.[5]

There is no question that the burden was on condemnees to prove that, by reason of the taking of a portion of their property, the value of their property had been impaired: *Lizza v. Uniontown City*, 345 Pa. 363, 28 A. 2d 916 (1942). However, "burden of proof" and the "weight of the evidence" are not one and the same; the former remains on the party upon whom is imposed the duty of producing a certain amount of evidence in order that he may not lose summarily while the latter involves the credibility or persuasive quality of the evidence produced and, during a trial, may shift from side to side as the trial proceeds. See: *Henes v. McGovern*, 317 Pa. 302, 176 A. 503 (1935); *Wright v. Straessley*, 321 Pa. 1, 182 A. 682 (1936).

Certain principles of law are presently applicable: (a) a jury may believe all or part of or none of the testimony of any witness (*Commonwealth v. Melton*, 406 Pa. 343, 353, 178 A. 2d 728 (1962); *Gaita v. Pamula*, 385 Pa. 171, 174, 175, 122 A. 2d 63 (1956)); (b) a jury in a condemnation case may not disregard evidence as to property values and substitute its own ideas (*Roberts v. Philadelphia*, 239 Pa. 339, 344, 86 A. 926 (1913)); (c) in a condemnation case a jury may disregard the opinion of the property owner or his expert (*Durika v. Derry Township School District*, 415 Pa. 480, 482, 203 A. 2d 474 (1964)) or the opinion of

---

[5] Witness Meltzer testified the "before taking" value was $1,-018,700, the "after taking" value was $985,600 and the actual damage $33,000. Witness McClatchy testified the "before taking" value was $850,000, the "after taking" value was $825,000 and the actual damage $25,000.

an expert for the condemnor (*Ray v. Philadelphia,* 344 Pa. 439, 25 A. 2d 145 (1942)); (d) the weight of evidence [6] dependent on oral testimony is always for the jury, not the court. (*Springer v. Allegheny County,* 401 Pa. 557, 560, 165 A. 2d 383 (1960); *Kosco v. Hachmeister, Inc.,* 396 Pa. 288, 291, 152 A. 2d 673 (1959)).

In *Lee v. Springfield Water Co.,* 176 Pa. 223, 228, 35 A. 184 (1896) the court below had instructed the jury that the verdict " 'should not be less than the highest amount the defendants have expressed themselves willing to pay. It ought not to be much higher than the lowest estimate put upon it by the plaintiffs' witnesses' ". In reversing the court below because of this erroneous instruction, this Court said: "A party may be willing to pay more than he should in order to avoid or to end litigation. *The duty of the jury is to fix the true sum necessary to compensate the plaintiff.* In doing this they are helped, but not controlled, by the estimates of witnesses, or the efforts of parties to buy their peace. All these considerations may be taken into account but they are in no sense controlling." (Emphasis supplied.) In *Newton v. Philadelphia,* 276 Pa. 464, 120 A. 415 (1923), this Court stated: *"The jury were bound to consider all the testimony and should not be instructed to base their verdict on the testimony of a single witness. . . .* While it is true the jury might have disregarded entirely the opinion of any one or more of the witnesses, if, in their view, the estimates given by such witnesses were unreasonable or their credibility impaired, yet, in forming their judgment, it was their duty to consider all the evidence and give each part the weight to which it was entitled" (at p. 466). (Emphasis supplied.)

---

[6] To weigh evidence is to determine its effect in inducing belief or to determine which evidence carries greater conviction or is more worthy of belief.

In *Ray v. Philadelphia,* 344 Pa. 439, 25 A. 2d 145 (1942) where we held that the condemnor was not bound by the opinion of its own expert as to the value of the property appropriated,[7] we said: "Expert witnesses are not the jury. ' "They cannot take the stand and say such and such is the case and then decide the case . . . any . . . expert testimony . . . is merely opinion testimony. It may be of value and it may be of no value, just as it appears to you [the jury]' "": Commonwealth v. Shults, 221 Pa. 466, 467-8. In all such matters the jury must be left to the free exercise of its own judgment. It cannot be bound by the opinion of the witnesses or the instruction of the court." (at p. 441)

In *Avins v. Commonwealth,* 379 Pa. 202, 206, 108 A. 2d 788 (1954), it was stated: ". . . we are not to be understood as even implying that the court was bound to accept as verity the estimate of the damage as testified to by any one of the expert witnesses. Expert testimony from its very nature is not proof of a fact. It is never more than opinion."

However well intentioned the court below may have been, unfortunately the effect of its instructions, supra, was to usurp the power and function of the jury. As a practical matter, that which the court said placed its imprimatur of approval on the convincing nature and believability of the Commonwealth's opinion evidence and then required the condemnees to prove that the damages were greater than testified to by the Commonwealth's experts. The *value* and *convincing nature* of the opinions expressed by the Commonwealth's experts were for the jury, the trier of the facts. The weight to be given to the testimony of these experts was a question for the jury and it alone; the court's instruction invaded this jury function and evaluated the expert

---

[7] See: *Avins v. Commonwealth,* 379 Pa. 202, at p. 207, 108 A. 2d 788 (1954).

testimony as effective in inducing belief. In this respect the court erred. That such error was prejudicial to condemnees is beyond question and for this reason a new trial is rendered imperative.

In view of the conclusion reached ordinarily the condemnees' other contentions need not be considered. However, in view of the grant of a new trial, we deem it important to note the references to Carwithan Avenue in the Commonwealth's case as a "paper street". Carwithan Avenue was not a "paper street" [8] but a legally opened street and, except for lack of grading and paving, it occupied the same status as any other legally opened street. To such street condemnees had the *right* of access even though, in fact, such street, because of its lack of grading and paving, was not readily usable. The references to such street as a "paper street" may well prejudice condemnees. Any such reference upon the retrial of this cause must be avoided for it portrays a non-existent fact as a fact.

Judgment reversed.

Mr. Chief Justice BELL concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority opinion holds that the trial court erred in charging the jury that condemnees had the burden of proving that the amount of damages was greater than that shown by the Commonwealth's evidence. I see nothing wrong with that charge. The majority do not dispute the principle that the burden is on the condemnee to prove his damages. But that is no different from requiring the condemnee to overcome the Commonwealth's evidence as to damages. Actually, the lower court's charge was favorable to the instant con-

---

[8] As to meaning of "paper street", see: *Milford Borough v. Burnett*, 288 Pa. 434, 438, 136 A. 669 (1927); *Hazleton v. Lehigh Valley Coal Co.*, 339 Pa. 565, 570, 16 A. 2d 23 (1940).

demnees because it lessened their burden to proving only that they suffered damages in excess of the amount testified to by the Commonwealth's expert witnesses. In effect, the charge established a plateau below which the jury could not find, but did not in any way establish a ceiling on damages. Under *Ray v. Philadelphia*, 344 Pa. 439, 25 A. 2d 145 (1942), this constituted usurpation of the jury's function, but only the condemnor may complain. In the instant matter, the Commonwealth has not raised the issue, and we should not permit it to be raised by the condemnees.

I would further point out that although a Commonwealth expert witness referred to a legally opened street as a "paper street" he explained that in evaluating plaintiff's right in the street he gave full consideration to the rights of ingress and egress. Moreover, the court charged that the street should be considered as legally opened, and it was so described by other witnesses. I am satisfied that any error was cured and that we should affirm the judgment of the court below.

I dissent.