Redevelopment Authority of the City of Philadelphia, Appellant, *v.* The United Novelty & Premium Company, Inc., Appellee.

Argued October 5, 1973, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Francis J. Moran,* with him *Richard D. Malmed* and *James D. Crawford,* for appellant.

*Leon W. Silverman,* with him *Stein & Silverman,* for appellee.

OPINION BY JUDGE KRAMER, December 20, 1973:

This is an appeal filed by the Redevelopment Authority of the City of Philadelphia (Authority) from

an Order of the Court of Common Pleas of Philadelphia County, dated May 24, 1973, granting a new trial to the United Novelty and Premium Company, Inc. (United Novelty) arising out of an eminent domain case.[1]

On September 23, 1964, the Authority condemned the realty of United Novelty located at 425 Market Street in the City of Philadelphia. This plot of ground contained 4,059 square feet with a frontage on Market Street of 19½ feet. It extended approximately 203 feet (the record contained several figures between 200 and 205 feet) and had a rear frontage of 20 feet on Commerce Street. The building was four stories high and had a finished basement. It was constructed of brick and had a fully automatic elevator and fire protection sprinkler system. This realty was located in an area of Philadelphia where "novelty, premium and toy companies" had developed their wholesale and retail businesses. United Novelty, the owner of the subject realty, was a corporation owned and controlled by three brothers, one of whom died subsequent to the taking. The brothers purchased the property in December, 1941, and later incorporated. The record clearly shows that the building was in good condition and that the entire

---

[1] The record which was certified to this Court by the lower court did not include the pleadings in the case, the exhibits which were introduced into evidence before the court, or the Order of Court granting a new trial. By an Order of this Court signed by the President Judge on April 24, 1973, the Authority was "directed to reproduce the record in its entirety." This Order came about as a result of delays in the prosecution of this appeal by the Authority. The Authority, to the date of this writing, has not given any explanation for its failure to carry out the Order of Court or its duty to make certain that the entire record was lodged with this Court. This lack of courtesy to the Court and poor appellate practice should not be condoned. In the interest of not further delaying the disposition of this case and because the missing documents and evidence are not necessary for our holding in this case, we are proceeding without same.

building was used by United Novelty for its wholesale and retail toy sales and warehousing activities. It should also be noted that this property is located in what is known as The Independence Mall Redevelopment Area.

On October 15, 1964, a Board of View (Board) was appointed and a hearing held, after which the Board, on November 12, 1968, awarded the following damages to United Novelty:

"Premises: 425 Market Street and
414 Commerce Street
PLOT No. 192 on the Official Plan

| | |
|---|---|
| Real Estate | $115,000.00 |
| Machinery & Equipment | 7,000.00 |
| Business Dislocation | 4,000.00 |
| TOTAL | $126,000.00 |

"For all elements of damage under the Eminent Domain Code of 1964. There is no compensation for delay in payment because owner is still in possession."

The Authority filed an appeal from the Board's award. Following a de novo jury trial before the lower court, the jury returned a verdict, on June 15, 1971, as follows: "To the plaintiff [United Novelty] we award $86,000.00 for his property, and for machinery and equipment $2,000.00, a total of $88,000.00." The jury awarded nothing for business dislocation damages. Thereafter, United Novelty filed a Motion for a New Trial asserting eleven specifications of error. On May 24, 1972, the lower court granted the motion. The Authority appealed to this Court and thereafter the Opinion of the lower court was filed.

The question presented to this Court by the Authority is whether the court below abused its discretion in

granting a new trial. To give our Opinion some logical sequence, we begin by looking at the court's Opinion wherein the first reason given for the new trial was that the jury's verdict was so grossly inadequate that it shocked "the conscious [sic] of the Court," i.e., (a) the jury's verdict was substantially lower than the award of damages made by the Board; (b) the complete omission of any damages for business dislocation by the jury in comparison to the $4,000.00 award of the Board; and (c) the $2,000.00 award for loss of machinery and equipment by the jury in comparison to the Board of View award of $7,000.00 and the "uncontradicted evidence" of United Novelty establishing the loss at $8,760.00. Second, the lower court pointed out in its Opinion that the testimony of the Authority's expert witness was "erroneous as to several important factors" which may have misled the jury in its final verdict. Lastly, the court in effect confessed error in its Charge by concluding that it may have misled the jury in its instructions on United Novelty's burden of proof. Our review of the record, as submitted to us, permits us to conclude that the Order of the lower court granting a new trial should be affirmed.

Our scope of review on the question of whether the lower court abused its discretion or committed an error of law in the granting or refusing of a new trial was ably discussed by Mr. Justice POMEROY in *Austin v. Ridge*, 435 Pa. 1, 255 A. 2d 123 (1969), where it is stated:

"The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this Court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion. Burd v. Pennsylvania Railroad Company, 401 Pa. 284, 164 A. 2d 324 (1960); Decker v. Kulesza, 369 Pa. 259, 85 A.

2d 413 (1952); Bellettiere v. Philadelphia, 367 Pa. 638, 81 A. 2d 857 (1951). This brings us to the central problem, viz., what freedom does the trial court have to review and set aside a jury verdict where the evidence presented to the jury is legally sufficient to sustain that verdict?

. . . .

"Established doctrine in Pennsylvania dictates that a trial judge abuses his discretion when he grants a new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. Hummel v. Womeldorf, 426 Pa. 460, 464, 233 A. 2d 215 (1967). Where, however, the trial court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he is under a duty to grant a new trial. Pritchard v. Malatesta, 421 Pa. 11, 13, 218 A. 2d 753 (1966). Our rule may be simply stated; its content is more elusive; and its application will of course require a continuing exercise of judicial sensitivity. The burden of the approach outlined is to treat the legitimacy of the trial court's grant of a new trial as a function of the seriousness of the jury's departure from that result which the trial court feels is dictated by the evidence. Where the case is close and the evidence contradictory, the jury must perforce be given freer rein; but a new trial should be granted and will be upheld where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand.

. . . .

"In reviewing the grant or refusal of a new trial to determine whether there has been a palpable abuse of discretion, we must view all the evidence in the record. See Noel v. Puckett, 427 Pa. 328, 235 A. 2d 380 (1967); Sherman v. Manufacturers Light & Heat Co., 389 Pa. 61, 68n, 132 A. 2d 255 (1957); and Denman v. Rhodes, 206 Pa. Superior Ct. 457 (1965)." 435 Pa. at 4-6, 255

A. 2d at 124-5." This Court has consistently followed those guidelines. *See D'Alfonso v. Department of Transportation,* 5 Pa. Commonwealth Ct. 341, 291 A. 2d 117 (1972) ; *Felix v. Baldwin-Whitehall School District,* 5 Pa. Commonwealth Ct. 183, 289 A. 2d 788 (1972) ; and *Lewis v. Urban Redevelopment Authority of Pittsburgh,* 5 Pa. Commonwealth Ct. 176, 289 A. 2d 774 (1972).

With the foregoing in mind, we conclude that this is not merely the case of a jury verdict being substantially lower than the award of damages by the Board; rather, this is a case where the evidence presented by the condemnor is lacking in substantiality when compared with the evidence presented by the condemnee. The Authority presented only one witness on valuation. This witness disclosed that he did *not* use the income approach to valuation. He did *not* use "replacement costs, less depreciation" in his evaluation. He relied *entirely* upon comparable sales. Although he stated that he had utilized some 45 sales between the years 1958 through 1964, the record discloses some sales were not reasonably comparable and that he was in complete error on at least one sale. He admitted that he had no comparable sales for two years prior to the date of taking. He admitted that he had no personal knowledge of the condition of the buildings used in his comparable sales analysis while acknowledging that the condition of United Novelty's building was "good." One of the comparable property sales involved a garage which had been gutted by fire, prior to sale. While admitting that property facing on two streets, as did United Novelty's property, increased the value, he did not disclose whether any of his comparable sales were similarly situated. We have carefully read and reread the record which permits us to agree with the lower court that in the interest of justice the jury's verdict does strike at one's conscience.

With regard to the damages for the loss of machinery and equipment, the record disclosed that only United Novelty presented evidence. Its witness testified that such damages were $8,760.00. The cross-examination of this expert witness disclosed only insignificant discrepancies. The record permits us to conclude that the jury's verdict in the amount of $2,000.00 was grossly inadequate.

The section of the Eminent Domain Code effective for this condemnation as it relates to business dislocation damages was Section 609 of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, §609, as amended, 26 P.S. §1-609. That section read as follows: "The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business located on the condemned property, but only where it is shown that the business cannot be relocated without substantial loss of patronage. Compensation for such dislocation shall be the actual monthly rental paid for the business-premises, or if there is no lease, the fair rental value of the business premises, multiplied by the number of months remaining in the lease, not including unexercised options, not to exceed twenty four months or multiplied by twenty-four if there is no lease. The amount of such compensation paid shall not exceed five thousand dollars ($5,000) and shall not be less than two hundred fifty dollars ($250). A tenant shall be entitled to recover for such business dislocation even though not entitled to any of the proceeds of the condemnation." Eminent Domain Code, Act of June 22, 1964, P. L. 84, §609.[2] The jury in this case awarded no business dislocation damages. The Authority argued that United Novelty had a burden of proving its busi-

---

[2] The above quoted statute was repealed subsequently by the Act of December 29, 1971, P. L. 635, §6. The subject of business dislocation damages is now covered by the Eminent Domain Code, 26 P.S. §1-601A(b).

ness could not be relocated without substantial loss of patronage. *See Lectronic Distributors, Inc. v. Redevelopment Authority of Philadelphia,* 217 Pa. Superior Ct. 310, 272 A. 2d 208 (1970). The Authority contended that United Novelty failed to carry this burden. It also utilized the age of the oldest brother stockholder of United Novelty (age 66 at the time of trial) as proof that this business was not intended to be relocated after the taking. Once again, our careful reading of the record disposes of this issue. Counsel for United Novelty carefully developed the facts that prior to condemnation, the immediate area of United Novelty's property was the center for the retail and wholesale sales of all toys, gifts and novelties in the Philadelphia area. The record disclosed that United Novelty did make attempts to relocate, without success. The record reveals that because of the mammoth redevelopment project, there just wasn't any property available to United Novelty suitable for its business. United Novelty even attempted to utilize a governmental relocation office, without success. Cross-examination by counsel for the Authority failed to discredit this evidence, and the Authority presented no evidence to the contrary. The record in this case established the right of United Novelty as a condemnee to business dislocation damages. In view of the fact that the jury omitted any such damages the granting of a new trial was proper.

Lastly the lower court also granted a new trial on its determination that it had misled the jury in its charge by instructing the jury that United Novelty had the burden of proving that its damages were greater than those testified to by the Authority's witness. To get the full import of our holding, we quote that portion of the court's charge in question:

"In this court the burden of the plaintiff is to prove his case by a fair preponderance of the credible testimony. What do you mean by that? Take my two hands

as a scale, as two scales. Plaintiff puts in evidence here that the property as the plaintiff has alleged—I use these figures because they are the ones we are talking about—plaintiff says, the Novelty Company, my property according to my expert is worth $142,200.00. That is this side. Redevelopment Authority says no. We have appraised it but we feel that all you are entitled to is $69,200.00. Plaintiff: 'I want $142,200.00.' I am talking about the property now. 'No, you are entitled to $69,000.00.' They start off even. Plaintiff will have to produce and put in the scale here in my right hand expert testimony, credible, believable and substantial, by someone who is an acknowledged expert, or will be accepted as an expert with background and so forth, reasons why that property should not start, not from zero, let's say start from the $69,000.00 that the Redevelopment Authority is willing to give. Bring it down. Show by the reasonable, credible evidence it is worth $142,200.00.

"Now, Redevelopment Authority says, Oh no. This is their side. We can show you by credible testimony sales and leases and rentals and so forth, whatever they use, as a basis for their value. That is all it is worth, $69,200.00. We will give you that for that reason. Now, they have been on the stand.

"*Plaintiff's duty is to show by a preponderance of testimony that he is right,* and how does he come about doing that? Well, go into the facts. The defendant, Redevelopment, has to show it is right, and he has to come in with facts. Now, you are going to have to weigh those facts and make your determination between the two. Who is right, whether the top figure for the plaintiff or the top or low figure for the defendant is right, or, frankly, somewhere between there, between the two. And I am not suggesting, but you have that authority. You have that final authority by which you have to weigh the whole thing and remember the facts,

and I will go into it." (Emphasis added.) In the case of *Morrissey v. Department of Highways*, 424 Pa. 87, 225 A. 2d 895 (1967), the Court was confronted with a similar charge by the trial judge. In that case, the instruction to the jury read in part: " 'The State disputes the amount of damages to the extent that the plaintiff is claiming damages in excess of that testified by the State's witnesses. The plaintiff has the burden of proof, must prove by a fair preponderance of the credible evidence, that the damages are greater than that which the State's evidence shows.' " 424 Pa. at 91, 225 A. 2d at 897. There the Court went into great detail concerning the principles of law pertaining to the province of the jury and the difference between the "burden of proof" and the "weight of the evidence." In ruling on the court's charge quoted above, the *Morrissey* Court concluded: "Having examined the charge in its entirety, we are of the opinion that the court erred in instructing the jury that the condemnees had the burden of proving that their damages were greater than the damages testified to by the Commonwealth." 424 Pa. at 91-2, 225 A. 2d at 897. Counsel for the Authority made a valiant effort to distinguish the court's charge in *Morrissey* from the charge in this case. Admittedly, they were not exactly the same. However, they are sufficiently similar to permit us to affirm the court below. The trial judge was correct when he agreed with United Novelty that he may have misled the jury with that portion of the charge quoted above.

In passing, we also note that the trial judge's description of United Novelty's expert witnesses on damages to machinery and equipment was improper. In its charge, the court said: "The next witness called was Theodore Snyder on equipment, furniture and equipment, fixtures and equipment, and you remember he is a young man, not with too many years of experience, but they have to start at some age." Although the court

...t on to say that this "young fellow . . . gave considable evidence of the experience he has had in appraising . . ." it is our observation that this kind of characterization of a witness tends to mislead a jury of laymen who look to the judge for guidance.

In summary, we reiterate that this is not merely a case of inadequacy of a jury verdict based upon a comparison with the award by the Board. This is a case, where, after taking the record, as transmitted to this Court, and scrutinizing it, the verdict of the jury resulted in a miscarriage of justice which struck at the conscience of the trial court judge. We agree with the court below that the record supports its granting a new trial. We, therefore, affirm the Order of the court below.

Judge ROGERS concurs in the result only.

