505 A.2d 1046

Southeastern Pennsylvania Transportation Authority, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

West Goshen Township, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

342

Argued December 11, 1985 before Judges Craig and Colins, and Senior Judge Kalish, sitting as a panel of three.

*Vincent J. Walsh, Jr.,* with him, *James F. Kilcur* and *G. Roger Bowers,* for petitioner, Southeastern Pennsylvania Transportation Authority.

*Ronald C. Nagle, Buckley, Nagle, Gentry, McGuire & Morris,* for petitioner, West Goshen Township.

*Richard S. Herskovitz,* Assistant Counsel, with him, *John B. Wilson,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Joseph J. Malatesta, Jr., Malatesta, Hawke, McKeon & Morris,* for intervenor, William Freas.

OPINION BY JUDGE CRAIG, March 4, 1986:

The Southeastern Pennsylvania Transportation Authority (SEPTA) and West Goshen Township appeal an order of the Pennsylvania Public Utility Commission that directed them to develop plans to improve an existing rail crossing. The commission concluded that "a public rail/highway crossing exists where Snyder Avenue (T-617) crosses at-grade one track of the Southeastern Pennsylvania Transportation Authority (SEPTA) in West Goshen Township, Chester County." Accordingly, in view of that conclusion as to the public status of the crossing, the commission exercised its jurisdiction to order that:

1. SEPTA prepare and submit to the commission for approval and to the parties of record for examination, construction plans, cost estimates and descriptions needed for the construction of an at-grade crossing and also submit plans and cost estimates for automatically operated flashing light railroad crossing warning signals with short-arm gates at that crossing.

2. West Goshen Township prepare and submit to the commission for approval and to the parties of record for examination, plans and cost estimates for the construction of the approach roadways within the commission's jurisdiction.

3. Complainant, William Freas, submit a detailed report describing his efforts and progress in obtaining 'all required approvals to build a facility for his manufacturing business and facilities to lease to other businesses on the subject parcel of land, and securing tenants for his proposed industrial park, and his specific plans and time frames for beginning and completing the proposed development.'

344

The commission further directed that, after the parties provided the necessary information, it would determine what party or parties would construct the required improvements and would allocate the costs of the improvements and assign responsibility for future maintenance. We reverse.

Our scope of review requires us to affirm the commission unless we find a violation of constitutional rights or error of law, or that substantial evidence does not support the decision. *Norfolk and Western Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980).

Snyder Avenue, to the extent designated as Township T-617, exists today in two separate sections. The first section, originating at an intersection with South Concord Road, runs west to an intersection with Bolmar Street and stops at Bolmar. The second section, west of the first, starts at South High Street and continues east, intersecting with Matlack Street, and continues further east to a deadend before it would intersect or pass under the West Chester By-Pass. Thus, neither of these sections reaches the crossing in question. The public character of the bifurcated portions of Snyder Avenue is not contested in this appeal.

The complainant, Freas, a property owner whose land would benefit from the rail crossing improvements, asserted to the commission that, rather than existing in two discrete segments, Snyder Avenue in fact is one continuous public road. Appellants counter that the disputed roadbed linking the two sections had been severed by the West Chester By-Pass, constructed in the early 1950's, and by a landfill that covered the roadbed in the 1960's, and that the roadbed had never been maintained by nor dedicated to the township. Freas further alleged that the missing link of Snyder Avenue, crossing the SEPTA railroad tracks, had in fact, been used by the public on a regu-

lar basis from the mid-1920's through at least the 1950's and therefore existed as a public road by prescription. Freas presented testimony by two local witnesses, Marshall Jones and Harold Court, each addressing a different period of time, to support his assertion.

Properly stated, the issue before us is: Did the testimony establish, as a matter of law, a sufficient public use of the roadbed over a period of at least twenty-one years so as to establish a public road by prescription? We conclude that, as a matter of law, the evidence presented by those two witnesses does not establish such a public use. Rather, the testimony regarding usage is consistent with establishing a private use, as in a license or in an easement.

There are three methods to establish the existence of a township road as a public one:

> The first is the introduction of court records showing the road to have been opened under the Act of June 13, 1836, P.L. 551, 36 P.S. §1781 *et seq.* The second is provided in the Second Class Township Code of May 1, 1933, P.L. 103, §1105, 53 P.S. §66105, setting forth the circumstances under which there arises a conclusion or presumption that a road is public. The third is by prescription, requiring uniform, adverse, continuous use of the road under claim of right by the public for twenty-one years.

*Stewart v. Watkins,* 427 Pa. 557, 558-559, 235 A.2d 604, 605 (1967).

Freas contends that the roadbed linking the two established public sections of Snyder Avenue is in fact a public road established by prescription. Establishment by prescription is composed of two main elements: adverse and continuous public use and such use for a period of at least twenty-one years. Al-

though various state courts accept the prescription concept, some states consider prescription actually as a dedication, a grant to the public. Other states base prescription on an estoppel theory which prevents the landowner from denying the existence of a public easement. Pennsylvania is in this latter group, with prescription analogized to the statute of limitations and not the fiction of a grant. *In re Krier's Private Road,* 73 Pa. 109 (1873).

The legal definition of what constitutes a "public use" is critical to our determination of whether a valid prescriptive status exists as to the disputed roadbed linking the two established sections of Snyder Avenue. Surprisingly, our research has revealed little Pennsylvania case law analyzing the criteria for defining public use; we have reviewed case law from other states and the appropriate treatises in developing our analysis here.

Although the uninterrupted use of land as a roadway by a limited number of persons for a sufficient length of time may establish a private right-of-way, clearly no public easement would arise from such a use. 26 C.J.S. Dedication §18 (1956).

In defining public use, we must look at the reasons why people use the road. A public use is not made out by proof of the use of a road merely by those having business with the concerns to whose establishments the road provides access, or by any one individual. *Olson v. Erie R. Co.,* 99 N.J.L. 485, 124 A. 367 (1924) (determination of whether a public railroad crossing had been prescriptively established). The use must be by the public in general, as against a limited segment of the public. *Lee v. Uvalde County,* 616 S.W.2d 367 (Tex. App. 1981).

In this case, Marshall Jones, a local farmer, testified about his use, from the mid-1920's through the early 1950's, of the disputed roadbed. The bulk of

Jones' testimony refers to his use of that roadbed for business purposes. In the 1920's, Jones used the roadbed to visit two people, located on that road, that he "did business with." N.T. 140. In the 1930's, Jones used the road to pick up a hired hand, living there, for work on his farm. In the 1940's and through 1953, Jones traveled the road to buy burlap bags from another man then living on the road. The remainder of his testimony concerning his use of the road is that during this entire time, from the mid-1920's through 1953, he "occasionally" used the road as a shortcut between Bolmar and Matlack Streets. Even this occasional use was limited, in the 1940's, when Jones testified that his use as a shortcut was only to visit cesspool cleaners for business purposes.

Harold Court, an insurance collection agent in the 1950's, testified that he collected insurance premiums from one house located on the contested roadbed, from the early 1950's through the late 1950's. Court, later a member of the West Chester Area Joint Refuse Disposal Authority, also testified that the landfill operated by the authority in the 1960's covered much of the contested roadbed. He further testified that, other than for access to the landfill, the contested portion of the roadbed west of Bolmar Street, crossing the SEPTA tracks, had no purpose or connection.

Although continuity of use is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right, *Keefer v. Jones,* 467 Pa. 544, 359 A.2d 735 (1976), here the use established by the testimony is more in line with a private use than a public use. In establishing a public use, the use must be more than an occasional trespass. *Scardino v. Hessler,* 91 Mont. 359 (1968). A public use must be substantial rather than casual and the scope and continuity of that use must be great

enough to clearly indicate to the owner that his property is in danger of being prescriptively used. *County of Orange v. Chandler-Sherman Corp.*, 54 Cal. App. 3d 561, 126 Cal. Reptr. 765 (1976) (ocean beach access case).

Both Jones and Court testified that they used the roadbed to visit private dwellings. Jones' additional testimony as to his mere "occasional" use of the stretch as a throughway does not establish sufficient continuity of conduct evincing the exercise of a public property right. Although public use does not mean use by every member of the local community, the legal concept nevertheless requires evidence of continuous use sufficient to constitute a benefit to the local community as a whole.

Here we have evidence concerning two witnesses' individual courses of conduct over substantially *separate* periods of time. Each of these uses was a private use. Even in the aggregate, they do not rise to the level of a public use, and hence do not provide the basis for establishment of a public road by prescription. Although Jones testified that he considered the roadbed to be a public road, that "people just used it" and that he saw other people walking along it, his declaration of use by the "public" is conclusory and lacks factual content. Also, we note that Jones testified that he "didn't remember meeting anybody" while using the roadbed, N.T. 143, nor did he remember seeing any cars on the roadbed.

Because we conclude that a public road does not exist on the disputed portion that crosses the SEPTA tracks, between the established and public portions of Snyder Avenue, this rail crossing is not within the commission's jurisdiction under 66 Pa. C. S. §2702.

The commission raises several alternate points that we will address.

First, the commission contends that the township admitted Item 3c of Freas' complaint that stated:

3c. that Snyder Avenue is a public road, West Goshen Township Road T-617.

That admission does not prove the existence of the disputed roadbed as a contiguous, public part of Snyder Avenue, West Goshen Township Road T-617. All that the complaint states in Item 3c is fact. Snyder Avenue, as a public road designated T-617, included only those separate portions that the township long treated as public and for which it received fuel tax funds for maintenance from the state. The complainant sought to prove that a disputed section of roadbed, linking the two public sections of Snyder Avenue, was also public. Item 3c of his complaint, as worded, did not necessarily include the disputed portion.

The commission points to a previous characterization, in proceedings before the commission by the Pennsylvania Railroad Company, of this disputed rail crossing as public in character. That characterization is not binding on this court or on the parties here. *Stewart v. Watkins* sets forth the three methods for establishment of a township road and does not include such a characterization as an acceptable basis.

Although the commission cites a township map as proof that the roadbed was never stricken or abolished as a public street, our Supreme Court long ago recognized that inclusion on a township map did not necessarily grant legitimacy to the claim that a public road exists. *Hazleton v. Lehigh Valley Coal Co.*, 339 Pa. 565, 16 A.2d 23 (1940).

Therefore, we reverse.

### ORDER

Now, March 4, 1986, the order of the Public Utility Commission is reversed.

Senior Judge KALISH dissents.