## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Georgiana M. Schnarrs and      :
Robert E. Schnarrs,           :
           Appellants      :
                   :   No. 1467 C.D. 2018
       v.               :
                   :   Argued: May 6, 2019
Rush Township Board of Supervisors   :
John Shannon, Patrick Couturiaux    :
and Samuel M. Estright        :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE McCULLOUGH                    FILED: May 31, 2019


        Georgiana M. Schnarrs and Robert E. Schnarrs (Schnarrs) appeal from the October 5, 2018 judgment of the Centre County Court of Common Pleas (trial court), which entered judgment on the trial court's January 29, 2018 verdict finding in favor of the Rush Township Board of Supervisors, John Shannon, Patrick Couturiaux, and Samuel M. Estright (collectively, Defendants).


### Facts and Procedural History

        This case involves a dispute as to whether a municipality established the existence of a public road by virtue of a prescriptive easement across the Schnarrs' property. The land at issue initially involved two properties located in Rush Township, a township of the second class, in Centre County, Pennsylvania. Both properties were initially owned by Harry and Gladys Forbes and were at one point

used for pasture. The Schnarrs purchased their property (Schnarrs Property) from the Forbes by deed dated May 12, 1982. The Schnarrs Property, located along Rick Street, was not in use when the Schnarrs purchased it. Around 1984, the Schnarrs built a commercial building and paved parking area on the Schnarrs Property. (Findings of Fact (F.F.) Nos. 1-3.)

Robert Schnarrs managed the commercial building and parking area on the Schnarrs Property from the time of its construction until he was incapacitated by a stroke in 1998. At that time, Robert Schnarrs' daughter, Laurie Kennedy, took over managing the Schnarrs Property, which initially involved mowing the grass and subsequently contracting with others to maintain the Schnarrs Property when the commercial building was rented. (F.F. Nos. 5-6.)

Brian and Barbara Weir purchased their property from the Forbes by deed dated April 5, 2006. Although the Weirs own two tracts of land on either side of the Schnarrs Property, only one tract (Weir Property), the portion located along Handte Street bordering the Schnarrs Property to the North, is at issue here. The Schnarrs Property had a paved area that ran from Rick Street to the border of the Weir Property, and the Weir Property had a cartway that ran from the Schnarrs Property to Handte Street, essentially connecting the two parallel streets. (F.F. Nos. 4, 7.)

Rush Township never received permission from the Forbes, Schnarrs, or Weirs to use the connector road between Rick Street and Handte Street, which became known as Rick Street Extended (RSE). Rush Township maintained that both the Schnarrs and Weir Properties were encumbered by a prescriptive easement in the form of RSE. Around 1984, Rush Township started maintenance of RSE by plowing, grading, and putting down stone and shale. Since 1984, Rush Township, the public,

school buses, snow plows, and delivery vehicles have used RSE. Since the early 1980s, prior to the construction of the commercial building on the Schnarrs Property, local residents used RSE to get from Handte Street to Rick Street because of safety concerns posed by using the alternative, which was Tyrone Pike. Local residents still presently use RSE in the manner described. (F.F. Nos. 8-12.)[1]



In 2005, prior to the Weirs' purchase of the Weir Property, RSE consisted of a 16-foot-wide gravel roadbed. Although the Weirs frequently walked their land in the area of RSE, the Weirs took no actions regarding RSE until 2013.

---

[1] This graph, taken from "Plaintiffs Exhibit 1," which was admitted during the hearing on the preliminary objections, depicts RSE highlighted in green. *See infra* p. 7.

Intending to use the RSE area of the Weir Property for a small orchard, Brian Weir had a survey performed in the Spring of 2013 to determine the property lines, after which he erected no trespassing signs. In November 2013, Brian Weir put down mulch in the RSE area. (F.F. Nos. 13-16.)

In December 2013, a snowplow became "bogged down" on RSE and, in the Spring of 2014, Rush Township removed the mulch, laid gravel, and graded the road. (F.F. No. 17.) In April 2014, Brian Weir put logs down on RSE to act as erosion barriers. On July 8, 2014, Defendants met with Brian Weir to discuss the use of RSE. The next day, Mr. Weir sent a follow-up email to Mr. Shannon, a member of the Township's Board of Supervisors, reiterating the points he took away from the meeting. (Reproduced Record (R.R.) at 107a.) In it, Mr. Weir stated, "Rush Township believes they [sic] had permission to cross the Forbes (now Weir) [P]roperty and the Schnarrs' [P]roperty with their trucks." (R.R. at 107a.) On July 17, 2014, Defendants passed a resolution recognizing RSE as a road in use by the public and maintained by Rush Township for at least 21 years. (F.F. Nos. 16-20; R.R. at 264a.)

In October 2014, Rush Township removed the barriers, put down gravel, graded the road, and cleared the area on RSE. On April 29, 2015, the Schnarrs emailed Rush Township revoking access to RSE, after which they installed no trespassing signs. Rush Township made plans to pave RSE, which would require it to exercise its purported right to the full 33-foot right of way. Thus, in July 2015, Rush Township installed markers and put down paint markings labeling along RSE. That same month, the Schnarrs and Weirs installed gates barring access to RSE, but the gates were removed in late July or August 2015. The Schnarrs subsequently listed

4

their property for sale, but one of the offers they received fell through due to the ongoing litigation in this case. (F.F. Nos. 21-25.)

On July 29, 2015, Georgiana Schnarrs filed suit against Defendants, alleging trespass by Rush Township on the Schnarrs Property and seeking damages. Mrs. Schnarrs separately filed an action to quiet title, seeking an order stating Rush Township had no interest in the Schnarrs Property. (Trial court op. at 2.)[2] Defendants filed preliminary objections to both of the Schnarrs' complaints, seeking dismissal for, among other things, Mrs. Schnarrs' failure to join an indispensable party, her husband, Robert Schnarrs.[3]

The trial court held a hearing on the preliminary objections, at which both parties presented witness testimony. Defendants presented the testimony of John Shannon, a member of the Rush Township Board of Supervisors since 1984. Mr. Shannon testified he lived approximately a half mile from RSE and was familiar with the area since 1978. Mr. Shannon described RSE as an approximately 16-foot-wide unpaved road connecting Rick Street and Handte Street. When asked who was maintaining RSE during Mr. Shannon's service as a Rush Township Supervisor, he stated, "Well, we use it. That was the connector from one street to another. We would make certain that it was passable. We would plow it in the wintertime. We would use it because the neighborhood was using it and also utilities were using it." (R.R. at 333a.) Mr. Shannon specifically recounted seeing school buses traverse RSE

---

[2] The Weirs likewise filed two actions on July 29, 2015, which were consolidated with the Schnarrs' case before trial; however, the Weirs did not file an appeal and their case is not presently before this Court.

[3] Both actions were initially filed by Georgiana Schnarrs; however, in November 2015, she amended both to add Plaintiff Robert Schnarrs as an indispensable party. (Trial court op. at 2.)

over the years. Mr. Shannon testified that this had been the case since at least 1984 and that Defendants were never stopped or hindered in any way from using RSE, until Mr. Weir purported to revoke access to the portion of RSE on his property and subsequently erected gates. Mr. Shannon also testified that when mulch was placed on RSE, he directed Thomas Bainey, Rush Township's Foreman and Roadmaster, to remove it. (R.R. at 326a-37a, 343a, 351a.)

With regard to expenditure of Township funds for maintenance on RSE, Mr. Shannon stated that Defendants used the Township's machinery, trucks, and fuel to ensure the road was passable. Mr. Shannon also testified that he never heard of either written or oral permission being granted to Defendants to use RSE. On cross-examination, Mr. Shannon conceded that it was possible that Defendants were granted permission to use RSE prior to 1984; however, Mr. Shannon stated that was "outside of [his] knowledge." (R.R. at 340a.) Additionally, Mr. Shannon testified that Defendants had not applied to obtain liquid fuel tax for RSE until approximately one year earlier. (R.R. at 342a-43a.) When asked about Mr. Weir's statement in the July 9, 2014 email to Mr. Shannon that Defendants believed they had permission to use RSE, Mr. Shannon stated, Defendants had received neither permission nor a prohibition on use of RSE. (R.R. at 348a-50a.)

Defendants also presented the testimony of Thomas Bainey, who stated he had been employed with Rush Township since 1978 and served as the Road Foreman since 1980. Mr. Bainey stated that Township vehicles began crossing RSE in the early 1980s, although the Forbes had not granted permission to do so. When asked whether he had ever been prevented by anyone from using RSE, Mr. Bainey stated, "Nobody has ever said nothing about it or never heard nothing on it." (R.R. at 362a.) Mr. Bainey testified that Township vehicles used RSE year-round and that, at

6

various times during his tenure, he put down 2RC or 2A stone on RSE after winter snowplowing had torn up the road.  Mr. Bainey also indicated that, when traveling on RSE, he had seen other "people in that area" (R.R. at 362a), using RSE to get from Rick Street to Handte Street.  (R.R. at 356a-62a, 369a-70a.)

The trial court sustained Defendants' preliminary objection for failure to join an indispensable party, and dismissed both complaints with leave to amend.  The Schnarrs filed amended complaints.  Defendants filed an answer and new matter, asserting various defenses, as well as a counterclaim against the Schnarrs, which sought a declaration that RSE was a public road.  In it, Defendants referenced both The Second Class Township Code (Code)[4] and law on prescriptive easements.  (R.R. at 284a-87a.)

On July 20, 2017, the trial court held a non-jury trial, after which both parties submitted briefs.  At trial, the court stated that the transcript of the proceedings on the preliminary objections would be incorporated and made part of the trial proceedings.  Defendants submitted aerial photographs of the land at issue taken in 1995 and 2006, as well as the testimony of several additional witnesses.  (R.R. at 466a.)  Defendants also presented the testimony of Edward Goode, a resident of the Township since 1985, who lived in close proximity to RSE.  Mr. Goode stated he had personally travelled RSE "quite a bit" during the past 30 years in order to avoid safety hazards involved with using the alternative Tyrone Pike.  Mr. Goode indicated that he had observed other residents, as well as Township plow trucks, use RSE.  Mr. Goode testified that he had never been stopped from using RSE until a few

---

[4] The Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *reenacted and amended by* Act of November 9, 1995, P.L. 350, *amended by* Act of October 9, 2008, P.L. 1520, 53 P.S. §§65101–698701.

years prior when the no trespassing signs and gates were erected. On cross-examination, Mr. Goode acknowledged that he had never received permission from anyone to use RSE and agreed that it was in his interest to have RSE declared a public road in order to have safer access to Tyrone Pike. (R.R. at 423a-34a.)

Defendants also presented the testimony of Kenneth Holden, a Rush Township resident who lived on Rick Street for 47 years. Mr. Holden testified he had been using RSE for approximately 37 years, but had received permission to do so in the 1970s or 1980s from the Forbes when the land was being used for pasture. He indicated that other members of the public had also used RSE since about the 1980s due to safety issues with using Tyrone Pike. Mr. Holden noted that RSE was initially pasture with tracks on it around the 1980s but around 1984 the paved road took shape and traffic increased because the Schnarrs built the commercial building on the Schnarrs Property and rented it to Prudential Insurance, whose employees would use it. Mr. Holden noted that he could see RSE from his house and, over the years, observed SUVs, sedans, pickups, commercial vehicles, such as UPS trucks, school buses, and Rush Township vehicles traverse RSE. Mr. Holden stated that he had seen Rush Township vehicles on RSE maintaining the road by placing gravel and grading it. On cross-examination, Mr. Holden testified that the Forbes never revoked permission to use RSE and that he had neither asked for nor received permission from the Schnarrs to use RSE, nor had he been told not to use RSE by the Schnarrs. (R.R. at 436a-44a, 475a, 477a-80a.)

The Schnarrs presented the testimony of Georgiana Schnarrs, who stated that her husband, Robert Schnarrs, maintained the Schnarrs Property and visited it quite often until his stroke in 1998. She stated that her daughter Laurie Kennedy began to manage the Schnarrs Property around 2003, at which point Ms. Schnarrs

8

would infrequently visit the property. Ms. Schnarrs stated she had never seen any part of RSE being used by the public, nor had she seen evidence of maintenance by Defendants; however, she admitted to seeing ruts from the parking lot on the Schnarrs property going toward Handte Street. Ms. Schnarrs stated that, in the 1980s, her husband told her that he consented to a request by Mr. Shannon for limited permission to use RSE for snowplows and emergency vehicles. Ms. Schnarrs also testified that three potential sales of the Schnarrs Property fell through, including a recent $100,000 offer from a church after the buyer backed out of the deal. (R.R. at 490a-95 498a-507a.)

The Schnarrs presented the testimony of Laurie Kennedy, an attorney in Harrisburg, Pennsylvania and daughter of the Schnarrs. Ms. Kennedy stated she became the property manager of Schnarrs Property after her brother passed away in 2003, at which point she visited the Property once or twice a year. Ms. Kennedy likewise stated that she had never seen Rush Township maintenance or public use of RSE, which she described as a 10- to 12-foot-wide trail. She stated that either the Schnarrs or their tenants had been responsible for snowplowing RSE and that, as property manager, she had hired people to cut the grass on the Schnarrs Property. Ms. Kennedy acknowledged seeing tire marks on RSE since the early 1980s, and that her father, sister, brother, and sister-in-law had used RSE. Ms. Kennedy testified that in 1984 or 1985, she recalled Mr. Schnarrs meeting with Mr. Shannon, during which Mr. Schnarrs agreed to permit Rush Township snowplows, firetrucks, and ambulances to use RSE. Finally, Ms. Kennedy testified that, due to the sale of the Schnarrs Property falling through, the Property incurred maintenance expenses that would not have accrued had the sale gone through, such as landscaping and insurance charges, taxes, and electricity bills. (R.R. at 555a, 558a-70a, 573a, 581a-82a, 587a.)

9

On January 29, 2018, the trial court issued a verdict, opinion, and order in favor of Defendants. Initially, the trial court stated, "Defendants relied on The Second Class Township Code, which permits a township to acquire a thirty-three foot right-of-way." (Trial court op. at 9) (footnote omitted). The court then stated, "Defendants' assertion of a *prescriptive easement* relies on [Section 2307(a) of the Code,] 53 P.S. §67307[(a)][5] . . . ." (Trial court op. at 9) (emphasis added).

Citing *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission (SEPTA)*, 505 A.2d 1046 (Pa. Cmwlth. 1986), the court then set forth the standard for a prescriptive easement: "Establishment of a public road through a prescriptive easement requires adverse and continuous use for at least twenty-one years." (Trial court op. at 9.) Concluding that RSE was a public road, the trial court's reasoning was as follows:

> [RSE] has been used by the public for travel since 1984, and has been maintained by Defendant[s] [] since that time as well. The public has established use of [RSE] since before 1984 by using the road to traverse between Rick Street and Handte Street. The use included delivery drivers, school buses, and everyday travel. Defendant[s] [] ha[ve] plowed, graded, put down stone and shale, as well as generally maintained [RSE] for more than twenty-one years. [The Schnarrs] failed to establish [that] the use was permissive, and the public use was adverse to the

---

[5] Section 2307(a) states,

Every road which has been used for public travel and maintained and kept in repair by the township for a period of at least twenty-one years is a public road having a right-of-way of thirty-three feet even though there is no public record of the laying out or dedication for public use of the road.

53 P.S. § 67307(a).

10

[Schnarrs'] interest. A prescriptive easement exists in the form of [RSE].

(Trial court op. at 10.)

The trial court next addressed the Schnarrs' action for trespass, which sought damages and a prohibition against future trespass. The Schnarrs asserted that, despite revoking Defendants' access to their Property, Defendants continued to remain on RSE, causing damage in the form of expenses for maintenance and upkeep after sale of the Schnarrs Property fell through due to the litigation. The trial court concluded that, because privileged conduct is not trespass, and because Defendants established a prescriptive easement across the Schnarrs Property, Defendants' entrance for travel and maintenance of RSE did not constitute trespass. (Trial court op. at 10).

The Schnarrs filed a motion for post-trial relief, requesting the court to modify the verdict in their favor. Defendants filed a memorandum in opposition to the Schnarrs' motion. The court heard argument on the matter but ultimately denied the motion. On October 5, 2018, the court entered judgment on the verdict.

The Schnarrs filed the present appeal,[6] arguing that (1) the trial court erred in finding for Defendants with respect to the actions in trespass and quiet title by applying the wrong standard; and (2) the trial court's findings were predicated on an error of law and were not supported by competent evidence.

---

[6] On review of a non-jury verdict, we are limited to determining whether there is competent evidence to support the trial court's findings and whether it committed an error of law. *Cogan House Township v. Lenhart*, 197 A.3d 1264, 1267 n.3 (Pa. Cmwlth. 2018). In addition, we must give the same weight and effect on appeal to the court's findings as the verdict of a jury. *Id.* Finally, we must view the evidence in the light most favorable to the verdict winner. *Id.*

11

**Discussion**

In *Stewart v. Watkins*, 235 A.2d 604 (Pa. 1967), our Supreme Court set forth three methods by which a public road can be established. "The first is the introduction of court records showing the road to have been opened under the Act of June 13, 1836, P.L. 551, [commonly known as the General Road Law]." *Stewart*, 235 A.2d at 605.

The second method is set forth in Section 2307 of the Code, which provides,

> (a) *Every road which has been used for public travel and maintained and kept in repair by the township for a period of at least twenty-one years is a public road having a right-of-way of thirty-three feet even though there is no public record of the laying out or dedication for public use of the road.*
>
> (b) In any proceeding pursuant to this section, any relevant oral or documentary evidence of public travel or maintenance and repairs by the township shall, if presented, be considered, including, but not limited to:
>
> > (i) Maps or surveys which are either generated by any governmental unit or are created pursuant to any judicial proceeding of the courts of this Commonwealth.
> >
> > (ii) Evidence concerning the distribution of government funds to the township pursuant to the act of June 1, 1956 (1955 P.L. 1944, No. 655), referred to as the "Liquid Fuels Tax Municipal Allocation Law."
> >
> > (iii) Approved subdivision plans, deeds or other documents containing a designation of the road as either a township road or otherwise.

12

(iv) Evidence that the road is an extension from a public road or public cul-de-sac, a throughway between other municipal or State roads or provides the only access to a municipal boundary line.

(v) Court orders, decisions, findings of fact or other matters of judicial record relating to public or private rights in the road.

(c) For purposes of this section:

(i) The frequency of use of a road may be considered relevant in any proceeding pursuant to this section, but, in the absence of additional findings on the purpose of such use, shall not alone be sufficient to establish that the road has been used for public travel.

(ii) The condition or sufficiency of the road surface for public travel may be considered relevant in any proceeding pursuant to this section, but, absent additional findings of actual public maintenance and repair, shall not alone be sufficient to establish maintenance and repair by the township.

(d) Nothing in this section shall be construed as affecting the weight or persuasiveness of any evidence presented in accordance with subsection (b) or the relevance of any evidence presented except as otherwise provided in this section.

(e) In any proceeding in which this section is relied upon to allege the existence of a public road, *the proponent of the public status of the road shall present evidence first, and the burden shall then shift to the opponent* to present evidence to refute the public status of the road.

53 P.S. §67307(a) (emphasis added); *see also Stewart*, 235 A.2d at 605.

The third is "by prescription, requiring uniform, adverse, continuous use of the road under claim of right by the public for twenty-one years." *Stewart*, 235

13

A.2d at 605. Thus, "[i]n order to merit a declaration that a road is public by means of common law prescription, one must show that the public used the road uniformly, adversely and continuously under a claim of right for 21 years." *Morgan v. Richter*, 724 A.2d 983, 987 (Pa. Cmwlth. 1999). "Although public use does not mean use by every member of the community, it is not made out by use of a road merely by those having business with the establishments to which the road provides access." *In Re Petition for Appointment of Board of Viewers*, 149 A.3d 911, 915 (Pa. Cmwlth. 2016); *see SEPTA*, 505 A.2d at 1049. "The use must be by the public in general, as against a limited segment of the public." *Id.* However, "the evidence need not show a constant use in order to establish continuity; rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." *Keefer v. Jones*, 359 A.2d 735, 737 (Pa. 1976).

With regard to their first argument, the Schnarrs assert that the trial court erroneously found that Defendants had a prescriptive easement because the court failed to apply the proper test and subject Defendants to the appropriate burden of proof set forth in Section 2307 of the Code. More specifically, the Schnarrs argue that, in their counterclaim, Defendants proceeded solely under Section 2307 of the Code, and that Defendants did not allege a prescriptive easement theory. The Schnarrs assert that, despite this, the trial court found in favor of Defendants with regard to the trespass action because it reasoned that Defendants established a prescriptive easement. The Schnarrs contend the trial court erred in doing so because it applied the wrong test and failed to require Defendants to meet the proper burden under the Code.

14

The Schnarrs assert that Section 2307 of the Code required the Defendants to present evidence showing that, for a period of 21 years, (1) the public traveled on RSE, and (2) there was maintenance and repair of RSE pursuant to the expenditure of county funds. The Schnarrs assert, however, that the trial court never applied this test and instead "concluded, *sua sponte*, that Defendant[s] had a prescriptive easement over the Schnarrs' Property." (Schnarrs' Br. at 21.)

The Schnarrs additionally argue that even if the trial court properly considered the existence of a prescriptive easement, it nonetheless applied the wrong standard because it did not require Defendants to demonstrate adverse and continuous use by, specifically, "clear and positive" proof. (Schnarrs' Br. at 23.) Emphasizing that the trial court did not use the term "clear and positive proof" in its opinion, the Schnarrs assert that, had the trial court analyzed the proper standard, Defendants would have failed to sustain their burden of proof with respect to a prescriptive easement because the evidence presented was insufficient, as described in their second argument.

In their second argument, the Schnarrs argue that the trial court's findings regarding the public use, and Defendants' maintenance, of RSE are unsupported by the evidence of record and, moreover, insufficient to establish the existence of a public road under *either* the Code or a prescriptive easement theory. Specifically, the Schnarrs assert that the finding that RSE "ha[d] been used by the public for travel since 1984, and ha[d] been maintained by Defendant[s] . . . since that time as well," (Trial court op. at 10), was conclusory and not based on evidence of record. The Schnarrs assert that the only testimony regarding placement of shale and rock on RSE was from Mr. Bainey, who stated he did not know when Defendants began putting down shale and stone. The Schnarrs contend that "[t]here is no

15

evidence" Defendants had been doing so for 21 years and cite Ms. Kennedy's testimony to the contrary that Mr. Schnarrs maintained the Schnarrs Property until 1998, when she took over maintenance.

The Schnarrs also dispute the finding that the public traveled over RSE for a period of 21 years, asserting that the two neighbor witnesses that Defendants produced admitted they were aware that RSE was owned by private individuals. The Schnarrs concede that "[t]here may have been testimony" that Mr. Bainey drove over RSE, but assert that such use "does not equate to use by the general public." (Schnarrs' Br. at 27.)

The Schnarrs argue that the trial court incorrectly found that Defendants had not received permission from the Forbes, Schnarrs, or Weirs to use RSE. In support, the Schnarrs cite Mr. Shannon's testimony that permission may have been granted prior to 1984, as well as the July 9, 2014 email from Mr. Weir to Mr. Shannon that, according to the Schnarrs, confirmed Defendants believed they had permission to use the property.

Additionally, the Schnarrs take issue with the trial court's characterization of the state of RSE in 2005 as "consist[ing] of a sixteen foot wide gravel roadbed." (F.F. No. 13.) Citing testimony from Mr. Weir, the Schnarrs state that "gravel was not placed on the disputed area until 2014," arguing "consistent" testimony described the disputed land as a dirt path of 10 to 12 feet. (Schnarrs' Br. at 27.)

Thus, the Schnarrs argue that Defendants' evidence failed to establish a public road under either the Code or a prescriptive easement theory. The Schnarrs contend that Defendants did not demonstrate that there was a public road under the Code because their witnesses did not testify that they believed the right to travel RSE

16

was a "public right" and, specifically, because Defendants failed to produce direct evidence of the expenditure of township funds for maintenance or repair of RSE for 21 years, by means of "a bill, invoice, meeting minutes or other documentation." *Id.* at 29.

The Schnarrs argue Defendants' evidence likewise did not establish a prescriptive easement because it did not establish a public use of RSE. The Schnarrs argue, "Presenting the testimony of two individuals who reside near the property and travel to and from the area due to the proximity of their residence does not meet the legal definition of public use." *Id.* at 30. The Schnarrs cite *SEPTA*'s pronouncement that "[a] public use is not made out by proof of the use of a road merely by those having business with the concerns to whose establishments the road provides access, or by any one individual." 505 A.2d at 1048-49.

Additionally, the Schnarrs argue Defendants' evidence failed to establish adverse use for 21 years, as is required for a prescriptive easement. The Schnarrs specifically cite the July 9, 2014 email from Mr. Weir, arguing that because it established Defendants believed they had permission to use the property, the use could not be adverse. The Schnarrs also assert that the aerial photos and maps submitted by Defendants could not, alone, establish a public road.

In response, Defendants argue that they established RSE was a public road under both the Code and a prescriptive easement theory. Defendants cite Mr. Goode and Mr. Holden's testimony, asserting their evidence established that Rush Township acquired a prescriptive easement due to the public's open, notorious, continuous, uninterrupted, adverse, and hostile use of RSE for a period of over 21 years.

17

With regard to the Code, Defendants assert that, although Section 2307 of the Code only required evidence of public travel *or* maintenance and repairs, they produced evidence of both citing the testimony of Mr. Shannon and Mr. Bainey, as well as the Schnarrs' witnesses who testified to seeing Rush Township maintenance crews traveling and plowing snow on RSE.

Finally, Defendants argue the trial court correctly concluded that the Schnarrs failed to prove that the public's use of RSE was by permission. Defendants observe that, as the party asserting that public use of RSE was by permission, the Schnarrs had the burden to produce evidence showing that public use of RSE was by license or permission. *See Loudenslager v. Mosteller*, 307 A.2d 286, 287 (Pa. 1973) (servient owner bears burden of proving use was pursuant to some license, indulgence or special contract inconsistent with a claim of right by the other party). Defendants note that the trial court declined to find the use was permitted, despite Ms. Kennedy's testimony about her recollection of a single conversation with her father in the 1980s, wherein Mr. Schnarrs conceded the request of Mr. Shannon, one of the three Rush Township Supervisors, to allow snowplows and emergency vehicles to use RSE.

Defendants assert that even if Mr. Shannon sought permission from Mr. Schnarrs as Ms. Kennedy claimed, case law from this Court holds that the actions of one member of the Board of Supervisors cannot rise to the level of official action which would bind Rush Township. *See Cardinal Crossing GP, LLC v. Marple Township* (Pa. Cmwlth., Nos. 1741 C.D. 2016, 1781 C.D. 2016, filed July 20, 2017) (holding that statements from township officials did not bind the township into taking specific official legislative action). Defendants also cite *Gehres v. Falls Township*, 948 A.2d 249 (Pa. Cmwlth. 2008), wherein we rejected the assertion of the land

18

owners that the testimony of the prior landowner that the pipes and ditches on the land remained there with his permission did not defeat the claim of adverse and hostile use of the property.

Regarding the method by which Defendants sought to establish a public road, Defendants' counterclaim seeking an order recognizing the public's right to use RSE cited facts and law pertaining to both the Code and a prescriptive easement. In the counterclaim, Defendants did, in fact, cite the standard set forth in Section 2307(a) of the Code. However, in the preceding paragraphs, Defendants alleged that RSE had been used by residents of Rush Township and the general public "for over 30 years," and such use had been "open, notorious, continuous, uninterrupted, adverse, and hostile throughout such period." (R.R. at 284a.) Defendants continued, "The right of the public to acquire a *prescriptive easement* in lands of another is the law of Pennsylvania, established by the Pennsylvania Supreme Court and upheld by the Commonwealth Court." (R.R. at 284a) (emphasis added). Defendants cited case law pertaining to prescriptive easements. *See* R.R. at 284a (citing *Wampler v. Shenk*, 172 A.2d 313 (Pa. 1961) (upholding a finding that a prescriptive easement existed given evidence that the roadway had been continuously and adversely used by the general public for over 50 years), *and Gehres*, 948 A.2d at 249 (affirming holding that a township's use of landowners' property for storm water runoff for over 21 years was an adverse use establishing a prescriptive easement)).

Thus, a fair reading of the counterclaim indicates that Defendants were attempting to establish a public road existed under both theories. Accordingly, we reject the Schnarrs' argument that the trial court *sua sponte* considered whether RSE constituted a public road under a prescriptive easement theory. Nevertheless, the Schnarrs are correct that the trial court seemingly conflated the two theories when it

19

stated, "Defendants' assertion of a prescriptive easement relies on [Section 2307(a) of the Code,] 53 P.S. §67307[(a)] . . . ." (Trial court op. at 9.)

Even so, however, the trial court's ultimate conclusion that Defendants established that RSE was a public road by means of demonstrating a prescriptive easement was not an error of law. The trial court found as fact that Defendants, the public, school buses, snowplows, and delivery vehicles had been using RSE since 1984, (F.F. No. 9); that Defendants performed maintenance on RSE since 1984, which included plowing, grading, and putting down stone and shale, (F.F. No. 10); and that Defendants "never received permission from the Forbes, Schnarrs, or Weirs" to use or maintain RSE, (F.F. No. 12). The use of RSE described in the findings undoubtedly meets the definition of adverse, open, notorious, continuous, and uninterrupted use of the Schnarrs' land for a period of at least 21 years.

Although the Schnarrs disagree with the finding that RSE "ha[d] been used by the public for travel since 1984, and ha[d] been maintained by Defendant[s] . . . since that time as well," (Trial court op. at 10), these findings are supported by the record. Mr. Shannon, Mr. Bainey, Mr. Goode, and Mr. Holden all testified to traveling RSE themselves and seeing other members of the public do so since the 1980s. In particular, Mr. Holden, who could see RSE from his house, testified to seeing cars, school buses, commercial vehicles, and Rush Township vehicles traverse RSE. Mr. Bainey testified to performing maintenance on RSE since the 1980s without permission, which included plowing snow and putting down stone. Mr. Holden likewise stated he had seen Rush Township vehicles grading and placing gravel on RSE. Finally, Mr. Shannon, Mr. Bainey, and Mr. Goode all stated they had never received permission from anyone to use RSE. Mr. Holden, while

20

acknowledging receiving personal permission from the Forbes in the 1970s or 1980s, likewise stated he had never received permission from the Schnarrs or the Weirs.[7]

Accordingly, the trial court had sufficient evidence to find that Defendants established that RSE was a public road by prescription. Even though "[i]t is well-settled that day-to-day use is not required to satisfy the elements necessary for creation of a prescriptive easement," Defendants did so here. *In Re Petition for Appointment*, 149 A.3d at 916. Moreover, Defendants' four witnesses "were not all individuals owning property or having business along RSE, but were representative of the broader population." *Id.* As the trial court found, their evidence "demonstrate[d] a settled course of conduct among the [Defendants'] representative witnesses that their use of [RSE] was the exercise of a property right. The witnesses described more than an occasional trespass, and the public use they testified to was substantial rather than casual." *Id.*[8]

---

[7] The fact that Mr. Holden personally received permission from the prior owners of the Schnarrs Property does not establish that Rush Township or the public at large sought or obtained permission to use RSE from either the past or present owners of the Property. *See Gehres*, 948 A.2d at 253.

[8] We disagree that the trial court's failure to use the words "clear and positive evidence" requires reversal of its legal conclusion that Defendants established a public road by prescription. Both this Court and the Supreme Court have previously declined to hold that the use or nonuse of "magic words" is dispositive on legal issues. *See, e.g.*, *Commonwealth v. Bennett*, 57 A.3d 1185, 1201 (Pa. 2012) ("[Our case law] does not require 'magic words' by the trial court, so long as the charge, when read in its entirety, appropriately conveys that an accomplice or coconspirator must possess the specific intent to kill in order to be found guilty of first-degree murder."); *Commonwealth v. Saunders*, 602 A.2d 816, 818 (Pa. 1992) ("The review does not focus upon whether certain 'magic words' were included in the [jury] charge. Rather, it is the effect of the charge as a whole that is controlling."); *DeFrancesco v. Western Pennsylvania Water Co.*, 453 A.2d 595, 597 (Pa. 1982) ("We note that, just as the form of an action or the manner in which [it] is titled does not automatically vest jurisdiction in the courts, the mere fact that a party to an action qualifies as a regulated public utility does not divest the courts of original jurisdiction. It is not to magic words, but to the essence of the underlying claims, we look in determining where jurisdiction **(Footnote continued on next page…)**

21

Contrary to the Schnarrs' suggestion, *SEPTA* does not dictate a different outcome. In *SEPTA*, the Supreme Court held that testimony presented by two witnesses was not sufficient as a matter of law to establish a public road by prescription. 505 A.2d at 1049-50. The Court observed that the witnesses only testified to using the road to visit private dwellings during substantially separate periods of time, which constituted private, and not public, use. Additionally, although one witness stated he considered the road to be public and that he had seen other people walking on it, the Court determined this declaration of public use was "conclusory and lack[ing] factual content." *Id.* at 1050. Further, the Court noted, the second witness testified that he did not remember meeting anybody or seeing any cars while using the road. *Id.* Conversely, in this case, Defendants' witnesses testified to seeing all manner of vehicles, including school buses, commercial trucks, and Township vehicles, traverse RSE on a regular basis. Because Defendants' witnesses did not testify to using RSE for the sole purpose of getting to their personal dwellings or businesses along RSE, *SEPTA* is distinguishable.

Additionally, although the Schnarrs argue the trial court should have accepted Ms. Kennedy's testimony over Mr. Shannon's and concluded that use of RSE was by permission from the Forbes, Schnarrs, or Weirs, the trial court's decision not to do so was not an abuse of discretion. *Belleville v. David Cutler Group*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015) ("The trial court was not obligated to agree with

---

**(continued…)**

properly lies."); *Department of Transportation, Bureau of Driver Licensing v. Jones*, 547 A.2d 877, 878 (Pa. Cmwlth. 1988) (The law "requires that the driver be under arrest at the time chemical testing is refused. No magic words are required[.]"). Here, the trial court's findings were supported by substantial evidence and we agree with its ultimate conclusion of law that RSE is a public road by prescription, which Defendants proved with clear and positive evidence.

22

or adopt either party's proposed findings of fact or conclusions of law, and failure to do so does not constitute either an abuse of discretion or error of law.") Ms. Kennedy did assert that Mr. Shannon sought and obtained permission for snowplows and emergency vehicles to use RSE; however, even if Mr. Shannon's alleged request for permission could be imputed to Defendants or Rush Township as a whole, the trial court rejected this testimony by virtue of its finding to the contrary: "Defendant[s] [] never received permission from the Forbes, Schnarrs, or Weirs to cross or maintain [RSE]." (F.F. No. 12.) As the fact-finder, the trial court had the authority to make credibility determinations and resolve conflicts in evidence. *Merrell v. Chartiers Valley School District*, 51 A.3d 286, 293 (Pa. Cmwlth. 2012). In so doing, the trial court was "free to believe all, part, or none of the evidence." *In re Funds in Possession of Conemaugh Township Supervisors*, 753 A.2d 788, 790 (Pa. 2000). The Schnarrs' argument that the trial court should have accepted Ms. Kennedy's testimony is merely a challenge to the weight and credibility findings of the trial court, which we will not disturb on appeal. *Belleville*, 118 A.3d at 1196.

Thus, accepting the trial court's findings as we must, given their evidentiary support in the record, we discern no error in the trial court's conclusion that RSE was a public road under a prescriptive easement theory. Because Defendants demonstrated a prescriptive easement existed, we need not reach the merits of the Schnarrs' arguments alleging Defendants failed to meet the standard set forth in Section 2307 of the Code.[9]

---

[9] Parenthetically, we observe that the trial court's opinion did address eminent domain and *de facto* takings; however, the opinion indicates that its ruling pertained to the Weirs, as the Schnarrs made no such arguments in their complaints. (Trial court op. at 12-13.) As we stated in *Einhaus v. Fawn Township* (Pa. Cmwlth., No. 642 C.D. 2015, filed June 9, 2016) (unreported), "When an entity clothed with the power of eminent domain enters and appropriates private property for its own use, the landowner may treat the entity's actions as a *de facto* taking or inverse **(Footnote continued on next page…)**

23

Accordingly, the judgment entered by the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

_____

**(continued…)**

condemnation and the landowner's exclusive remedy is to proceed under the Eminent Domain Code. *See, e.g.*, *Fulmer v. White Oak Borough*, 606 A.2d 589, 591 (Pa. Cmwlth. 1992)." Slip op. at 6. Notably, "[t]he acts complained of in the instant matter—establishing and maintaining a public road . . . by taking land held in private hands—fall squarely within the Township's exercise of its eminent domain power." *Einhaus*, slip op. at 7. Thus, because nothing in this Court's opinion or the trial court's order disposes of the issue of whether a *de facto* taking occurred, the Schnarrs are not foreclosed from pursuing a remedy under the Eminent Domain Code. *Id.*

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Georgiana M. Schnarrs and      :
Robert E. Schnarrs,      :
         Appellants      :
     :    No. 1467 C.D. 2018
       v.      :
     :
Rush Township Board of Supervisors      :
John Shannon, Patrick Couturiaux      :
and Samuel M. Estright      :

## ***ORDER***

AND NOW, this 31ˢᵗ day of May, 2019, the judgment of the Centre County Court of Common Pleas, dated October 5, 2018, is hereby affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge